60 U.S. 355 (____)
19 How. 355
JOSIAH WALTON, ADMINISTRATOR OF PRISCILLA COTTON, ET AL., COMPLAINANTS AND PLAINTIFFS IN ERROR,
v.
ALLEN COTTON, NOAH COTTON, AND WILLIAM E. JONES.
Supreme Court of United States.

It was argued by Mr. Baxter for the plaintiffs in error, and by Mr. Lawrence for the defendants.
Mr. Justice McLEAN delivered the opinion of the court.
This case comes before us by a writ of error to the Supreme Court of Tennessee.
It was commenced by filing a bill, in Sumner county, before Chancellor Ridley, in which the complainants state they are the children of Priscilla Cotton and Thomas Cotton, who was a captain in the revolutionary war; that after his death, his widow, Priscilla, filed her declaration for a pension, on account of her husband. Josiah Walton made the application; but she died before the pension was granted. Walton administered on the estate, and he renewed the application, at great trouble and expense. The Pension department allowed about one-half the amount claimed. Out of the money drawn by the administrator, he retained what was agreed for his services and the services of counsel, and paid over the residue, in equal shares, to all the children of Priscilla Cotton, and the representatives of her children who were dead.
The bill further represents that William E. Jones, who acts as an agent for pension claims, and Allen Cotton, with the view of getting the business and money into their hands, applied to the County Court of Davidson county, and suppressed from said court the fact that an administration on said estate had been granted in the county of Sumner, and procured Allen Cotton to be appointed as administrator, which was done with the view of depriving the complainants and others of a legal portion of said pension fund.
The new administrator made application for the extension of the pension, so as to cover the whole time from the allowance *356 of the pension to the death of the pensioner, only one-half of which had been granted. The application was successful; and Jones, under a power of attorney from the administrator, received the sum of $3,500 from the Government, which the defendants retain in their hands, and refuse to pay over; three-fifths of the amount of which the complainants are entitled to, if the children who died before the decease of their mother be not entitled to any share, and three-eighths, should they be entitled.
The answer admits many of the allegations of the bill, but denies that the defendants acted improperly in procuring administration in Davidson county. They admit that they applied for and obtained the above sum, with a full knowledge by the Pension Office of the prior administration. The money was paid to them as the only living children of Priscilla Cotton at the time of her death; and they allege that, this being the construction of the Government, it is conclusive.
The chancellor, on the final hearing, decreed that the representatives of Arthur Cotton, John Cotton, and Polly Foxall, were entitled to three-fifths of said $3,500, and interest, to be paid over to said children; and that said defendants, Noah Cotton, Allen Cotton, and William E. Jones, who have received said fund, are liable to pay over said three-fifths of $3,500, amounting to $2,100, with interest as aforesaid, to be paid over to the children of Polly Foxall, one-third; to the children of Arthur Cotton, one-third; and to the children of John Cotton, one-third, after paying the costs and expenses of their suit, the costs to be paid out of the fund in the hands of the defendants.
From this decree, there was an appeal to the Supreme Court of Tennessee, which, on a hearing, reversed the decree of the chancellor, holding that the fund should be distributed among the living children at the time of the pensioner's death, and that no part of it should go to the representatives of deceased children.
As the complainants claim a right under an act of Congress, which by the decree of the Supreme Court has been rejected, the case is brought within the twenty-fifth section of the judiciary act, which gives us jurisdiction.
The first section of the act entitled "An act supplementary to the `Act for the relief of certain surviving officers of the Revolution,'" dated June 4th, 1832, gave pensions to surviving officers, non-commissioned officers, musicians, soldiers, and Indian spies, who had served in the Continental line, or State troops, volunteers, or militia, at one or more terms  a period of two years  during the war of the Revolution, &c., and *357 Cotton was entitled to receive his full pay, not exceeding the pay of a captain in the line, from the 4th of March, 1831, during his natural life. The fourth section of the same act provided that the amount of pay which accrued under the act before its date should be paid to the person entitled to the same as soon as may be; and in case of the death of any person embraced by the act, or of the act to which it is supplementary, during the period intervening between the semiannual payments directed to be made and the death of such person, shall be paid to his widow, or, if he leave no widow, to his children.
The act of July 4th, 1836, in the first section, gives five years' half-pay to widows, or children not sixteen years of age, under certain circumstances. If the soldier had died since the 4th March, 1831, and before the passage of that act, the pension which had accrued during these periods is given by the second section to the widow, and if no widow, to the children. The act of the 7th July, 1838, extends the benefits of the third section of the act of 1836 to widows whose husbands have died since the passage of the act. The act of 19th July, 1840, enacts, in the first section, that any male pensioner dying, leaving children and no widow, the pension due shall be paid to his children, and that it shall not be considered assets of said estate.
The second section provides, when a female pensioner shall die, leaving children, the amount due at the time of her death shall be paid to her representatives, for the benefit of her children. And the third section declares, "that on the death of any pensioner, male or female, leaving children, the amount due may be paid to any one or each of them, as they may prefer, without the intervention of an administrator."
The question in the case turns upon the construction of these statutes. Does a right construction of them give the pension due to the grandchildren of the deceased pensioner; and if so, does the bounty extend to the representatives of his children who died before his decease; or, do the acts restrict the bounty to his children living at the time of his death? This last construction has been adopted and acted upon by the Government.
This view is mainly founded on the considerations, that on the death of the pensioner, the bounty is given to his widow, and, if he leave no widow, to his children; that it was a bounty of the Government, arising from personal considerations of gratitude for services rendered, is not liable to the claims of creditors, and should not be extended, by construction, to persons not named in the act.
*358 The pension is undoubtedly a bounty of the Government, and in the hands of an administrator of a deceased pensioner it would not be liable to the claims of creditors, had the acts of Congress omitted such a provision. But the legislative intent is shown to be in accordance, in this respect, with the law. But should the word children, as used in these statutes, be more restricted than when used in a will? In the construction of wills, unless there is something to control a different meaning, the word children is often held to mean grandchildren. There is no argument which can be drawn from human sympathy, to exclude grandchildren from the bounty, whether we look to the donors or to the chief recipient.
Congress, from high motives of policy, by granting pensions, alleviate, as far as they may, a class of men who suffered in the military service by the hardships they endured and the dangers they encountered. But to withhold any arrearage of this bounty from his grandchildren, who had the misfortune to be left orphans, and give it to his living children, on his decease, would not seem to be a fit discrimination of national gratitude.
Under the construction given by the Department, if a male pensioner die, leaving no widow or children, but grandchildren, the pension cannot be drawn from the Treasury. This would seem to stop short of carrying out the humane motive of Congress. They have not named grandchildren in the acts; but they are included in the equity of the statutes. And the argument that the pension is a gratuity, and was intended to be personal, will apply as well to grandchildren as to children.
There can be no doubt that Congress had a right to distribute this bounty at their pleasure, and to declare it should not be liable to the debts of the beneficiaries. But they will be presumed to have acted under the ordinary influences which lead to an equitable and not a capricious result. And where the language used may be so construed as to carry out a benign policy, within the reasonable intent of Congress, it should be pone.
On a deliberate consideration of the above statutes, we have come to the conclusion that the word children, in the acts, embrace the grandchildren of the deceased pensioner, whether their parents died before or after his decease. And we think they are entitled, per stirpes, to a distributive share of the deceased parent.
This construction does not correspond with the decree of the chancellor, nor with that which was expressed by the Supreme Court in reversing his decree. The decree of the Supreme Court of Tennessee is therefore reversed, and the case *359 is directed to be transmitted to that court, that the views here given may be carried into effect, in the ordinary mode of proceeding by that court.
Mr. Justice DANIEL, Mr. Justice CURTIS, and Mr. Justice CAMPBELL, dissented.
Mr. Justice CURTIS dissenting.
I cannot concur in so much of the opinion, just delivered, as construes the word "children," in this act of Congress, to mean children and grandchildren. The legal signification of the word children accords with its popular meaning, and designates the immediate offspring. (Adams v. Law, 17 How., 419, and cases there cited.) It may be used in a more enlarged sense to include issue; but the intention so to employ it must be manifested by the context, or by the subject-matter. I see nothing in the context or the subject-matter of this act to carry the meaning of the word children beyond its ordinary signification. Nothing has been suggested, save the conviction felt by some members of the court, that grandchildren are proper subjects of this bounty of Congress. This consideration is, in my opinion, too indeterminate to enable me to construe the act to mean what it has not said.
Mr. Justice DANIEL and Mr. Justice CAMPBELL concurred in the above opinion of Mr. Justice CURTIS.