FRANCISCO ACUÑA AYBAR, Plaintiff and Appellant, v. PENSION BOARD OF THE OFFICERS AND EMPLOYEES OF THE INSULAR GOVERNMENT, ETC., Defendants and Appellees.

No. 8073. Argued February 14, 1941.—Decided February 21, 1941.

*Rafael Soltero Peralta,* for appellant; *George A. Malcolm, Attorney General of Puerto Rico,* and *Jesús A. González, Assistant Attorney General,* for appellee.

Mr. Justice Travieso delivered the opinion of the Court.

The plaintiff-appellant, Francisco Acuña Aybar, alleges that for 28 consecutive years he was an employee of The People of Puerto Rico, until June 30, 1929, when he was involuntarily separated from the service because the position which he occupied had been eliminated from the budget for the year 1929–30; that when Act No. 22 of September 22, 1923 ((2) p. 156) went into effect the plaintiff availed himself of its advantages and when on September 2, 1925, the new Act—No. 104 of that year (p. 948)—was approved, the plaintiff was included in its provisions; that in accordance with Sections 3, 5 and 8 of said Act No. 104 of 1925, on the date when he was separated from the service, the plaintiff had acquired the right to voluntary retirement with a pension or life annuity of $560; that due to the fact that he was involuntarily separated from his position and that he was not notified of the separation within a reasonable time, the plaintiff did not have an opportunity to request his pension while he was in active service and was forced to request it after he was out of the service; that the defend-

ant Board, basing itself on Section 3 of said act, denied him his right to the pension.

The legal bases for the petition ˙of mandamus filed by the appellant before the District Court of San Juan, are:

(a) That the provisions of Section 3 of Act No. 104 of 1925 are not applicable to cases of retirement due to involuntary separation from the service.

(b) That the Board acted in an arbitrary and unreasonable manner in regard to the essential purposes of the Retirement Act.

(c) That the action, of the Board has deprived the plaintiff of his annual pension from June 30, 1929, to the date of the complaint, in a total amount of $5,133.33; and that the plaintiff will continue to be deprived of his pension until the Board is ordered by a judicial decree to pay him.

(d) That the defendant board has sufficient funds to pay the amounts owed to the plaintiff.

The defendants alleged in a demurrer that the complaint did not state sufficient facts to state a cause of action. The district court granted the demurrer and dismissed the complaint. The plaintiff appealed and he alleges that the lower court erred in holding that the plaintiff had a reasonable time to request his pension before being separated from his employment; in granting the demurrer based on matter which should have been proven and disregarding the allegations of the complaint; and in holding that the complaint was fatally defective.

 The lower court decided this case under the erroneous impression that the request for the pension of the petitioner was based on Section 9 of Act 104 *supra*. In paragraph 6 of his complaint, the petitioner specifically states that his alleged right to a pension arises from the provisions of Sections 3, 5 and 8 of said law. It is true that Section 9 is applicable to claims for pensions in cases of involuntary separation, but it is no less true that according to the clear and precise terms of the statute, in order that a claim may prosper in a case of involuntary separation, the claimant

employee should allege and prove (*a*) that he is 40 or more years old; (*b*) that he was involuntarily separated from the service but not by dismissal; (*c*) that at the time when he was separated he had served for a total amount of time not less than 15 years; and (*d*) that he was separated before he had a right to the pension. The petitioner in this case could not base his claim on said Section 9 because on the date when he was retired from the service he already had a right to claim his retirement according to the provisions of Sections 3, 5 and 8 of Act No. 104. Once the allegations of the complaint to the effect that "plaintiff was an employee in the active service of the Insular Government of Puerto Rico for 28 consecutive years" are admitted by the demurrer, there can be no doubt that before the date when he was involuntarily separated from the service, the plaintiff had a right to claim his retirement, according to Section 8 of the Act, which gives said right to any officer or employee who has served for at least 20 years.

█ █ The only question to be decided is: Did the plaintiff employee lose his vested right to retirement because he did not request voluntary retirement before he was involuntarily separated from the service?

Section 3 of Act No. 104, which is the Section giving the right to retirement with a life annuity by reason of age, physical disability or a number of years of services rendered, provides: "That persons not in active service at the time of their application for a pension shall have no right thereto."

The lower court decided that the complaint was fatally defective because it is stated in it that the plaintiff employee did not claim his pension until after he had been involuntarily separated from his employment. The plaintiff alleges in his complaint that he was not notified of the separation within a reasonable time to be able to claim his pension while still in active service. The lower court after consider-

ing the reasons the plaintiff had for not requesting his pension while in the service, stated as follows:

"...In the complaint the noncompliance with that obligation is intended to be excused by saying that he was not notified of the separation within a reasonable time to be able to claim his pension while still in active service; supposing but not admitting, that under exceptional and extraordinary circumstances such as the case of a petitioner who is suddenly and without notice separated from his employment, this legal obligation did not have to be complied with, yet we are convinced that this is not the case of the plaintiff. The latter states that he was separated from his position by legislative mandate on June 30, 1929; if his position was eliminated in the budget we have then that Act No. 51 of 1929 providing appropriations for the maintenance of the Government for the fiscal year which ends on June 30, 1930 (p. 274) was approved by the Governor on May 2, 1929, from which date plaintiff was legally bound to know that his employment would cease on the last day of the fiscal year and therefore he had sufficient time, almost 2 months, to exercise his right if he had been diligent. We have no knowledge that his position was eliminated by any special law, but even if this had been so, we take judicial notice that according to the provisions of Section 33 of the Organic Act, the Legislature terminated its session on April 15, 1929, whereby the Governor, according to the provisions of Section 34 of the same Act, only had thirty days after that date to sign it, for which reason it must necessarily have become law at the latest on the following May 15th, and in this case plaintiff had a month and a half to request his pension."

We do not agree with the foregoing conclusions. It can not be held that the plaintiff before June 30, 1929, the date on which he was notified of his separation, had knowledge of the Appropriation Act, especially taking into consideration that this law did not become effective until the 1st of July, 1929. "No presumption exists that all men know the law. The maxim 'a man is presumed to know the law,' is a trite, sententious saying, 'by no means universally true.' Ignorance of the law does not excuse persons so as to exempt them from the consequences of their acts, such as punishment for criminal offenses." *Municipal Metallic Bed Mfg.*

*Corp.* v. *Dobbs,* 253 N. Y. 313, 171 N. E. 75, 68 A.L.R. 1376.
See: Bouvier's Law Dictionary, Vol. 2, p. 1490, and 10
R.C.L. p. 874, note 12.

In the case at bar it is a fact alleged and accepted by
the demurrer that plaintiff had no knowledge of his separa-
tion from office until the 30th of June, when it was too late
to request the pension while on service. The lower court
was not justified in assuming that plaintiff knew before the
30th of June that his position had been abolished in the new
Appropriation Act. We must, therefore, consider and decide
the issue raised, on the assumption that plaintiff had no
knowledge of the elimination of his position until the day
prior to that when the new budget became effective.

The case of *Acosta* v. *Pension Board,* 42 P.R.R. 796, cited
by the lower court in support of the judgment appealed from,
may be easily distinguished from this one. José L. Acosta,
who was district attorney, filed a petition for a pension in
accordance with Section 9 of the law, basing his petition on
the fact that he was over 40 years of age, that he had
rendered services for a period over 15 years and had been
involuntarily separated from his office before he had acquired
the right to a pension. His petition was filed more than
1½ years after the expiration of the term of .4 years for
which he had been appointed. The fundamental reason
entertained by this Court in affirming the judgment which
denied the writ of mandamus requested by Acosta was that
petitioner had been appointed for a term of four years and
from the date of his appointment, "he knew that his appoint-
ment would expire at the end of the term for which he was
appointed." Acosta had sufficient time to have requested
his pension while he was on active service and he did not
do so; instead he waited 1½ years to file his petition with-
out giving any excuse or reason whatsoever to justify his
lack of diligence.

The petitioner in the present case has served as a public
employee without a fixed term of office, during a period in

excess of 28 consecutive years. His appointment, which was to continue indefinitely while he observed good conduct or until he retired voluntarily from service, did not give him notice, as in the case of District Attorney Acosta, of a fixed and fatal date when his office would expire by reason of the lapse of the term for which he was appointed.

The jurisprudence upholds in an uniform manner that the laws which create the right to enjoy a pension must be liberally construed, in order that the purpose of the legislator be fulfilled; and that the force and effect of said laws should not be limited strictly to the literal terms of the statute. *Walton* v. *Cotton*, 60 U. S. 355; *Hanscom* v. *Malden etc. Gas Light Co.*, 220 Mass. 1, 107 N. E. 426; *O'Dea* v. *Cook*, 176 Cal. 659; 48 C. J. sec. 4, p. 787.

As the human purpose of every pension law is to compensate and help in their old age or disability, those persons who during a number of years have faithfully served the community and who have contributed with part of their salaries to the creation and maintenance of the fund providing for the payment of pensions, we cannot conceive that in eliminating in the Appropriation Act the position of an employee who has rendered services during 28 consecutive years, the Legislature of Puerto Rico had the intention of depriving said employee of his right to claim his pension due to the sole fact that he did not comply with a condition which it became impossible to comply with by reason of the law itself. A strict construction of the statute within the facts alleged in the petition and accepted by the demurrer, would be equivalent to depriving petitioner of his right to receive a pension without due process of law, and would make the statute unconstitutional in its application.

We do not know whether the position which plaintiff occupied in the Government was unique in its class or whether in the previous budget there were various employees in the same service and with equal salary and classification. Nothing appears from the pleadings to this respect. If in

the budget one or more positions of a group of identical classification were eliminated, and if the designation of the employees who were to be separated from service depended on the head of the department, then petitioner was not bound to know that his position had been abolished, until the time when he was officially informed of its elimination. The notice given the day before that when the elimination was to become effective, did not give petitioner a reasonable term within which to claim his pension while still being within the service.

█ Having considered the facts alleged and admitted by the demurrer, and having given the law the liberal construction which we are bound to give it in order that the purpose of the legislator be complied with, we hold that the provisions of Section 3 of Act No. 104 of September 2, 1925, which demand that a petition for a pension be made while the employee is in active service, are applicable to cases of voluntary retirement; and that they are not applicable when the employee is involuntarily separated from service after having acquired the right to request his voluntary retirement with a life pension, unless the Pension Board allege and prove that the petitioner employee had an opportunity or a reasonable term within which to request his pension before his separation from office became effective and that he was not diligent in claiming that right.

For the foregoing reasons the judgment entered by the District Court of San Juan on July 29, 1939, must be reversed and the case remanded to said court for further proceedings not inconsistent with this opinion.

Mr. Justice Todd, Jr., took no part in the decision of this case.