# DRIGGS v. UTAH TEACHERS RETIREMENT BOARD et al.

No. 6598.   Decided November 1, 1943.   (142 P. 2d 657.)

*Derrah B. Van Dyke* and *Samuel C. Powell*, both of Ogden, for plaintiff.

*Grover A. Giles*, Atty. Gen., and *C. N. Ottosen*, Asst. Atty. Gen., for defendants.

CROCKETT, District Judge.

The plaintiff, Frank M. Driggs, was retired under the Utah Teachers' Retirement System in November of 1940, and his "retirement allowance" or "pension" was fixed and allowed by the defendant, Utah State Teachers' Retirement Board, in the sum of $143.58 per month for the remainder of his life. The 1941 legislature amended the law so that as it has been interpreted and applied by the defendant Board, the sum he receives per month was reduced to $98.19 per month. The question is squarely presented here: Is this an unconstitutional invasion of his vested contract rights?

This is an original proceeding wherein the plaintiff seeks a writ of mandate to compel the defendant Board to restore his monthly retirement allowance to the amount which was fixed under the law as it existed at the time of his retirement. The defendants have filed a general demurrer to the petition, and rely upon it. The parties have filed a stipulation as to certain facts, in addition to those stated in the petition, and the matter is submitted upon that basis.

The plaintiff served as a teacher in the public schools of Utah continuously for almost fifty years; during the last forty years he was Superintendent of the School for the Deaf and Blind at Ogden. His important contribution to the State of Utah and its educational system by his long record of outstanding service is conceded by all, but is, of course, not in any way determinative of his legal rights.

On June 3, 1937, he filled out the Teachers' Retirement System blank at the request of the defendant Board, and in accordance with the existing law. The law specifically provided that: "All teachers shall be deemed to consent to become members." He became a member of the Utah State Teachers' Retirement System on July 1, 1937; thereafter, a regular sum was deducted from his salary each month and paid into the System, making a total of $643.75 paid in at the time of his retirement. On November 20, 1940,

he became 70 years of age, and, under the law, was compelled to retire. On November 21, 1940, he was retired by the Board, and was required to fill out a printed application form, and to make a choice of several options for the payment of his retirement allowance. He selected what is known as "Option No. 1," under which it was determined he should receive a monthly retirement allowance in the sum of $143.58 for the remainder of his life. This total sum was made up of what was designated under the law as three separate funds, as follows:

No. 1. An "annuity" based upon the contributions by the member;

No. 2. A "pension" purchased by the contributions of the State, based upon the contributions by the member; and

No. 3. An additional "pension" purchased by the contributions of the State calculated upon a formula based upon the years of service and the salary of the member at retirement.

However, as stated in the stipulation of the parties, the three together form the "component parts of one monthly retirement allowance."

The Act creating the Utah State Teachers' Retirement System was Chapter 62, Session Laws of 1935; it was repealed, and the present teachers' retirement act was enacted by Chapter 85, Session Laws of 1937. Amendments were adopted by Chapter 80, Session Laws of Utah, 1939, and Chapter 60, Session Laws of Utah, 1941. The latter amendment changed the law under which petitioner's retirement allowance had been fixed, reducing the amount to be paid from the above mentioned funds No. 2 and No. 3, so that no retirement allowance would exceed the maximum of $100 per month. The fund No. 1, which is the repayment to the plaintiff of his own accumulated contributions on an actuarial basis, was left undisturbed. This 1941 Act, as it has been interpreted and applied by the defendants, reduced

the plaintiff's payments so that he would receive a total of $98.19 per month, which amount he has been receiving under protest since June, 1941.

It is the plaintiff's contention that he is entitled to the full $143.58 per month as fixed and allowed to him upon his retirement. On the other hand, it is the contention of the defendants that the funds numbered 2 and 3 are "pension funds" as denominated by the statute and that as such they are subject to change by the Legislature. They emphasize this by pointing out that the 1941 amendment specifically avoided any reduction in Fund No. 1 and reduced in amount only funds numbered 2 and 3.

The terminology used is not the controlling factor; calling fowl fish does't make it so, and the statute does not change the character of the fund by calling it a pension. It could have been called "adjusted compensation," "gift," "gratuity," or any other appellation, without changing the essential nature of the rights existing between the parties. We should disregard the terminology, and examine into the nature, purpose, and all of the facts and circumstances concerning this allowance to determine whether or not the plaintiff had a vested contractual right in his whole retirement allowance so that the right could not to be taken from him. *Schofield* v. *Zion's C. M. I.*, 85 Utah 281, 39 P. 2d 342, 96 A. L. R. 1083.

In summary we have the following facts in this case: 1. A pension or retirement allowance system was set up by the statute. 2. There was a continuance in employment in reliance thereon. 3. Plaintiff joined the system and contributed to the fund. 4. These continued over the required period until the retirement age. 5. Plaintiff retired. 6. He applied for the retirement allowance. And, 7, the application was allowed and the amount was determined and payments to the teacher were made. After all of the above conditions had been met, the amendment to the law was enacted which the defendants have interpreted to reduce his allowance.

It is undoubted that where the pension is a mere gratuitous allowance, springing from the generosity and appreciation of the grantor for a past service, the pensioner has no vested right and the pension is terminable at ■ the will of the grantor; *Walton* v. *Cotton,* 19 How. 355, 15 L. Ed. 658; *Pennie* v. *Reis,* 132 U. S. 464, 10 S. Ct. 149, 33 L. Ed. 426, affirming 80 Cal. 266, 22 P. 176, and also cases from numerous jurisdictions collected in the notes in 54 A. L. R. 943; 98 A. L. R. 505; 112 A. L. R. 1009; 137 A. L. R. 249.

This court in the case of *Schofield and Tingey* v. *Zion's C. M. I.,* supra [85 Utah 281, 39 P. 2d 343, 96 A. L. R. 1083], speaking through Mr. Justice Larson, who was then a District Judge, distinguished between pensions in the traditional sense, and a pension which is offered as an inducement for future service. In that case, even though the pension arrangement contained the language,

"The Board * * * reserves the right * * * to change the basis of pension allowances by increasing or reducing the same,"

our court held that after the necessary years had been served, the retirement age reached and the pension fixed and allowed, that the pensioners right was vested. It was indicated that in making the employees aware of the proposed pension, the employer held out to its employees that any one of them who served should be entitled to the pension; that this constituted an offer which the employee could fully accept by fulfilling all of the requisite conditions; so that thereafter his pension could not be reduced in amount. There is no question that under the principles laid down in the above case, the plaintiff herein would have been entitled to his full pension for the rest of his life if his rights had existed as against a private individual or corporation. In that case, our court referred to several cases involving public pensions and made no distinction between them and those where pensions were claimed against private individuals.

Our problem then is whether or not the fact that the grantor of the pension is the state would require a different rule. We are entirely aware that courts are ■ much more reluctant to find vested, enforcible pension rights as against the sovereign than against private persons or entities. The problem is not without difficulty; there is a conflict of law upon it.

In the note on vested rights in Pensions, 54 A. L. R. 943, it is stated:

"The unquestioned rule is that a pension granted by the public authority is not a contractual obligation, but a gratuitous allowance, in the continuance of which the pensioner has no vested right, and that a pension is accordingly terminable at the will of the grantor."

At page 945, it adds:

"By the great weight of authority the fact that a person has made compulsory contribution does not give him a vested right in the pension," listing cases from numerous jurisdictions of the United States in support of this rule.

This note is supplemented and the same rule reiterated in notes at 98 A. L. R. 505, 112 A. L. R. 1009, and 137 A. L. R. 249, supported by citation of many later cases.

The defendants cite and rely on the above A. L. R. notes and the cases therein referred to. It is true that those cases state the rule above quoted with respect to public pensions, but upon examining them, it will be found that they involve situations of fact substantially different from our case. Practically all of them involve a change in the pension or pension requirements prior to the fulfillment of all of the conditions by the person claiming the pension.

Typical of this is *Pennie* v. *Reis,* supra, a leading case, and the one quoted by practically every later case on the subject. The case involved the estate of a policeman who had contributed $2 every month for about eleven years to a fund from which death benefits were to be paid. Prior to his death, the statute authorizing the benefits had been

repealed. It was contended on behalf of his estate that he had acquired vested rights in the fund prior to the repeal of the statute. The court held that he had no such right. It said in 132 U. S. 464, 10 S. Ct. at page 151, 33 L. Ed. at page 430:

"The direction of the state that the fund should be one for the benefit of the police officer or his representative, under certain conditions, was subject to change or revocation at any time, at the will of the legislature. There was no contract on the part of the state that its disposition should always continue as originally provided. *Until the particular event should happen* upon which the money, or a part of it, was to be paid, there was no vested right in the officer to such payment. His interest in the fund was until then a mere expectancy, created by the law, and liable to be revoked or destroyed by the same authority." (Italics added.)

The decision was based upon the proposition that the statute was repealed before the death, and thus before the vesting of contractual rights, the inference being that if the death had occurred before the repeal, the right would have become vested.

An Illinois case also cited by the defendants as supporting their contention is that of *Beutel* v. *Foreman*, 288 Ill. 106, 123 N. E. 270. It involved the teachers' retirement act. During the term of service of the claimant, but before his retirement, the Act was amended to require a greater age before the pension would be granted. The court held that the Act was subject to amendment, and that one who sought a pension thereunder would have to meet the requirements of the Act at the time he sought his pension. In the *Schofield* v. *Zion's C. M. I.* case, supra, Justice Larson distinguished that case from one where the pensioner had fulfilled all of the conditions prerequisite to the granting of the pension, as in the case at bar.

An analysis of the other cases relied upon by the defendants will reveal similar distinctions in facts, and that some of the conditions had not been met prior to the change affecting the pension. It is not denied, however, that some

few authorities do directly support the contention of the defendants; see *McLeod* v. *Fernandez*, 1 Cir., 101 F. 2d 20, and cases therein cited.

The cases supporting the rule that there are no vested rights in public pensions usually rest mainly upon the proposition that the granting of the pension is a matter of legislative grace, and that such rights do not vest and may not be enforced as against the sovereign. In determining legal rights on the basis of fairness and justice, the idea of sovereign immunity is perplexing. It has the effect of clothing one party to the controversy with an advantage which is in most instances unfair and unwarranted.

Justice Wolfe in his concurring opinions in *Husband* v. *Salt Lake City*, 92 Utah 449, 69 P. 2d 491, and *Niblock* v. *Salt Lake City*, 100 Utah 573, 111 P. 2d 800, referred to the principle of the immunity of a governmental agency with respect to torts. At page 582 of 100 Utah, 111 P. 2d at page 804, of the Niblock case, he stated:

"The state should set the example. * * * Governmental immunity is granted on the old theory that 'the king can do no wrong' or, on better circumstanced morality, that the sovereign by its very nature cannot be sued * * *. One cannot bring into court the creator of the court itself. But neither these theories suffices in this modern day." Citing cases.

The idea that the king could do no wrong was merely a fictional concept without any righteous basis in law or logic. It arose out of the desire of the king and those holding favored positions under him to impose their will upon those who were less privileged. This antiquated idea has certainly never had any place in American jurisprudence.

The more rational approach to the notion of sovereign immunity was indicated by Blackstone, 1 Bl, Comm. 241, 242:

"The law ascribed to the king the attribute of sovereignty. He is a sovereign and independent within his own dominions, and he owes no kind of subjection to any other kind of potentate upon earth. Hence it is that no suit or action can be brought against the king,

even in civil matters, because no court can have jurisdiction over him; for all jurisdiction implies superiority of power."

It was thought an anomaly that the king should have jurisdiction over himself, and that he could be asked to make himself do something. In our government of three separate branches, this paradox does not exist. There is no reason why the judiciary in its proper function as an independent branch of the government should not be asked to adjudicate the rights of individuals against the other branches of the government, or even as against the judiciary itself.

It is also suggested that the legislature representing the sovereign people should not be fettered by acts of a previous legislature; that prospective pensioners know this, and accept the possibility that the law may be changed. This argument carried to its conclusion would defeat the purpose for which the law was passed, as no teacher would have any assurance of any pension whatsoever.

The State is merely a collection of individuals, and there seems to be no logical reason why the collective entity should not be bound by the same concepts of justice and morality as its individual members, at least with respect to its contractual obligations.

Mr. Justice Brandeis said in *Lynch* v. *United States*, 292 U. S. 571, 54 S. Ct. 840, at page 843, 78 L. Ed. 1434, at pages 1440, 1441, regarding the obligation of U. S. government under insurance contracts provided for by Act of Congress:

"Valid contracts are property, whether the obligor be a private individual, a municipality, a state, or the United States. * * * When the United States enters into contract relations, its rights and duties therein are governed generally by the law applicable to contracts between private individuals. * * * 'The United States are as much bound by their contracts as are individuals. If they repudiate their obligations, it is as much repudiation, with all the wrong and reproach that term implies, as it would be if the repudiator had been a State or a municipality or a citizen,' In re Sinking Fund Cases, 99 U. S. 700, 719, 25 L. Ed. 496 [501]."

While the *Schofield* v. *Zion's C. M. I.* case, supra, was against a private corporation, our court expressed a similar attitude toward governmental obligations at pages 286, 287 of 85 Utah, 39 P. 2d at page 344, 96 A. L. R. 1083:

"Should the government say that to all persons who shall enlist in the army and serve the full period of enlistment, with no demerit mark on his service record, a bonus of $500 would be given upon his retirement, would any one say that it constituted a mere gratuity like a pension bill passed by Congress for the veterans of past wars? * * * The offer in such cases constitutes a promise for a completed act, and once the act is completed by the acceptor the offer cannot be modified or withdrawn. It becomes a binding contract."

Some courts recognize this in principle but allow a reduction in the pension so long as the pensioner is not entirely deprived of it.

It is urged that if a private individual or a corporation oversteps itself and incurs obligations beyond its capacity to perform that it has recourse to bankruptcy or receivership, so that claims against it will be paid out on a pro rata basis in accordance with its ability to pay; that the state does not have this alternative; and that, for this reason, the subsequent legislature should have the power to adjust any allowances made so as to preserve the pension system and the state. In the case of *City of Dallas* v. *Trammell*, 129 Tex. 150, 101 S. W. 2d 1009, 112 A. L. R. 997, the decision was placed on that basis. The court said at page 1010 of 101 S. W. 2d:

"It appears undisputed that the pension fund of the City of Dallas had been from September 1, 1933, to October, 1935, inadequate to pay in full the monthly pensions due and payable to those on the pension roll."

The court indicated that the pensioner's right was subordinate to the right of the legislature to properly administer the fund, and especially where the reduction was necessary to the continued existence of the fund. It was also held in the case of *Retirement Board* v. *McGovern*, 316 Pa.

161, 174 A. 400, in which the court stated that the employee's right was an inchoate one until all of the conditions were satisfied; that it then ripened into a full contractual obligation, but also held that the legislature could alter and amend the act to keep intact the actuarial soundness of the system. See also *McBride* v. *Retirement Board of Allegheny County*, 330 Pa. 402, 199 A. 130; *Kane* v. *Policemen's Relief and Pension Fund*, 336 Pa. 540, 9 A. 2d 739; and *Talbott* v. *Independent School Dist.*, 230 Iowa 949, 299 N. W. 556, 137 A. L. R. 234; *State ex rel. Holton* v. *City of Tampa*, 119 Fla. 556, 159 So. 292, 98 A. L. R. 501; *Mell* v. *State*, 130 Ohio St. 306, 199 N. E. 72; *State ex rel. Lewis* v. *Zupnik*, 131 Ohio St. 94, 1. N. E. 2d 622.

If the question of the solvency or security of the pension system or of the State were involved, this argument might or might not have some merit. There is no such issue raised in this case, and the problem is not before us.

In the annotation at 98 A. L. R. at page 507, a limitation on the above quoted rule, that public pensions are not subject to vested rights, is noted as follows:

"The rule may be stated to be that when it has been determined that an officer is entitled to a pension and the pension has been officially allowed, or when the event happens upon which the granting of the pension is dependent, the pension thereupon becomes vested and cannot afterwards be revoked or impaired." (Citing numerous cases.)

This view is substantiated by the later note in 137 A. L. R. 249, and citing recent cases so holding, including the case there reported; *Talbott* v. *Independent School Dist.*, 230 Iowa 949, 299 N. W. 556, 137 A. L. R. 234. The court therein approved the usual rule that a school teacher has no enforcible property or contract right in a pension fund, even where a percentage of her salary was paid into the fund; the pension being dependent on a statute, it was stated that one legislature could not in matters of government or public policy bind the hands of a future legislature.

But the court asserted that where a pension is promised for services to be rendered in the future, it forms a part of the inducement for the individual to enter and remain in the employment, and in that sense is a part of the compensation paid for those services; that where the employee contributes part of his salary with a sum from the state or county under a quasi-contractual relationship creating a reserve retirement system, the retirement pay therefrom is not a pension. The court distinguishes this Talbott case from the usual pension case, and states (230 Iowa 949, 299 N. W. at page 563, A. L. R. at page 243),

"Until the employee has become eligible * * * his right to the retirement allowance is inchoate, and it may be affected by subsequent legislation."

And in 230 Iowa 949, 299 N. W. on page 567, 137 A. L. R. on page 248:

"On the last date * * * she had met every requirement under the provisions of the plan * * * to make her eligible to a service retirement allowance. * * * It is our conclusion that she is entitled to recover judgment for monthly retirement allowances * * * with lawful interest."

The case of *O'Dea* v. *Cook et al.,* 176 Cal. 659, 169 P. 366, was one wherein O'Dea, a San Francisco policeman, received injuries in the performance of his duty from which he died. Between the time of his injuries and his death, the San Francisco ordinance was amended to require that death ensue within a year of the injury to entitle the family to a pension. He did not die within the year, and when the widow sought her pension, it was contended that the amendment had deprived her of it. The court directed that she be awarded the pension and said at page 367 of 169 P.,

"A pension is a gratuity only where it is granted for services previously rendered * * * ,"

and held that when all of the conditions had been met that

the right to the pension vested and that the amendment thereafter did not divest such right.

This rule has been uniformly followed by a long list of subsequent California cases. In the case of *Klench* v. *Board of Pension Fund Com'rs,* 79 Cal. App. 171, 249 P. 46, the court distinguished the *Pennie* v. *Reis* case, supra, from one wherein the conditions had actually been met when the pension was applied for, and also held that when the event or the contingency happens upon which the officer is entitled to receive the money provided for pensioning him as a retired officer, that his right to be paid such money is a vested right.

In *McBride* v. *Retirement Board et al.,* 330 Pa. 402, 109 A. 130, the Supreme Court of Pennsylvania held that a retired county employee had a vested right in his retirement allowance which the legislature could not subsequently impair.

In *State ex rel. Stringer* v. *Lee,* 147 Fla. 37, 2 So. 2d 127, at page 132, 133, the court stated:

"The weight of authorities is to the effect that when a government by statute once establishes a compensation or retirement system for its said officers or employees and provides in part the funds and means for administering it * * * and any such officer or employee contributes money over a period of years and the contributions are placed to the credit thereof and the officer or employee has served * * * for the designated period of years, * * * and when the conditions arise or occur upon which * * * employees become eligible for retirement * * * then the said officers or employees have acquired a vested right under the terms of said statute which establishes a contractual relation which may not be affected or adversely altered by subsequent enactments." Citing numerous cases.

The Court of Appeals of New York also so held in the case of *Roddy* v. *Valentine,* 268 N. Y. 228, 197 N. E. 260; as did the Supreme Court of Georgia in *Trotzier* v. *McElroy,* 182 Ga. 719, 186 S. E. 817, 820, the court remarking:

"The ruling in this case is restricted to a holding that the pension is due only where the contingency provided has occurred before a

change in the charter, ordinances, or statute under authority of which the pension was to be paid."

See also *Crawford* v. *Teachers' Retirement Fund Ass'n,* 164 Or. 77, 99 P. 2d 729. The court therein distinguished the meanings of the words, "annuity" and "pension," and held that the payment provided for under the teachers' retirement fund plan were annuities and not pensions, and that such funds were thus subject to vested contractual rights.

It should be noted that until all of the conditions are fulfilled, the pensioner's right is inchoate and not vested. *People* v. *Whitlow,* 36 Cal. App. 2d 31, 96 P. 2d 977; *MacIntyre* v. *Retirement Board,* 42 Cal. App. 2d 734, 109 P. 2d 962; *Eberle* v. *LaGuardia,* 285 N. Y. 247, 33 N. E. 2d 692; and this was held to be so in *Walter* v. *Police and Fire Pension Commission,* 120 N. J. L. 39, 198 A. 383, even after the retirement age, but before the pension had been applied for and allowed.

As indicated in numerous of the above-mentioned cases, it is fundamental that the nature of the rights of the pensioner rest largely upon the language of the particular statute. The Supreme Court of the United States ■ so stated in *State of Indiana ex rel. Anderson* v. *Brand,* 303 U. S. 95, 58 S. Ct. 443, 82 L. Ed. 685, 113 A. L. R. 1482, which involved rights under an Indiana Teachers' Retirement statute.

Our own court referred to this same principle in ■■ *Schofield* v. *Zion's C. M. I.,* supra, at page 288 of the Utah report, 39 P. 2d at page 345:

"It is elemental, in construing a contract, that its purpose, its nature, and subject-matter should be considered. A construction giving an instrument a legal effect to accomplish its purpose will be adopted when it can reasonably be done and between two possible constructions that will be adopted which establishes a valid contract."

It is also true that a construction will be given a statute so that its purpose will be accomplished if that can be

reasonably done, and as between two possible constructions, that one will be adopted which does so give effect to its purpose. *Industrial Commission* v. *Daly Min. Co.*, 51 Utah 602, 172 P. 301; *West Beverage Co.* v. *Hansen*, 98 Utah 332, 96 P. 2d 1105; *Snyder* v. *City of Alameda*, Cal. App., 136 P. 2d 857; and that pension statutes are liberally construed in favor of the pensioner, *Walton* v. *Cotton*, supra; *Klench* v. *Board of Pension Com'rs*, supra; *Dillard* v. *City of Los Angeles*, 20 Cal. 2d 599, 127 P. 2d 917, 128 P. 2d 537; and authorities therein cited.

The avowed purpose and the only purpose which the act creating the Teachers' Retirement System could have is that of improving the Utah educational system by better compensating the teachers and rewarding them for faithful and continued service, thus making the profession more attractive to qualified persons. If the defendants' contention that the only vested right which the pensioner has is in his own accumulated fund, what would the act provide toward the accomplishment of its purpose? Any person can save up a fund and deposit it with an insuance company, or certain other financial institutions and have that fund repaid back to him on an actuarial basis, calculated on his life expectancy or other period of time. The prospect of the repayment to the teacher of the actuarial equivalent of his own money provides no incentive to the teacher which would accomplish the purposes of the Act. Furthermore, if by merely denominating these other funds as "pensions," the State and its Retirement Board retain the right to reduce or modify the allowance, even after the teacher has fulfilled every condition required of him, and has had his pension fixed and allowed, there remains no benefit to the teacher which would bring about the purposes of the Act.

Under the original 1935 Act creating the Teachers' Retirement System, an organization was provided for making provisions for retirement annuities, and requiring contribu-

tions from both the teacher and the State. Section 13 of the Act provided:

"The retirement board will guarantee at the beginning of each contract, for the life of such contract, interest compounded annually at the rate of 4 per centum, except as hereinafter provided for withdrawals."

And Section 9 of the Act provided:

"The retirement board shall adopt mortality tables for the retirement system hereby created, and, except as herein otherwise provided, shall determine what rates of interest * * * *but not so as to impair the vested rights hereunder* of any member of the retirement association, unless such modifications or changes shall be assented to by such member." (Italics ours.)

The italicized language above seems important as it indicates that rights would become *vested* under the system. It is hardly reasonable to assume that this language referred only to the contributions made by the teacher. This fund accumulated by the teacher was his own money, and there would be no vesting of his rights therein. Reference to the vesting of rights must necessarily have referred to rights in the other funds provided for.

It is true that the foregoing language is not contained in the present act, but by Chapter 85, Laws of Utah, 1937, which supplanted the 1935 act, the system in its entirety, together with all of its records and assets, was transferred to the present system, and Section 7 provides,

"* * * for the same purpose * * *."

Section 8 further provides:

"The retirement system shall be managed exclusively by a retirement board hereby created, which shall be the successor to and have the *powers and duties* of the teachers' retirement board heretofore created * * *."

Thus the present system has the same obligations to the membership as did the old one because it was established

for the same purpose and with the same duties. The members have the same inchoate contractual rights, which, upon completion of conditions precedent to retirement and actual retirement, ripen into vested rights under the new Act, as they would have done under the old. If the teacher's rights are ever to "vest," it must be when he has completed every condition required of him precedent to the receipt of his pension.

The language of Chapter 60, Laws of Utah, 1941, itself supports the contention of the plaintiff. The provision which purports to reduce the amount of payments under the system uses the word "members" throughout, and the reduction in amount previously allowed is, by the language of that section, only applicable to *members*. Section 27 of said chapter reads,

"A member, upon retirement for service as provided in Section 26, shall receive a retirement allowance * * *"

and goes on to provide for the payments which the defendants have construed to reduce the plaintiff's allowance. But Section 16 of the 1937 Act, which is still in effect, provides:

"If a member shall die *or be retired*, or if he shall withdraw his contributions upon termination of service in a status requisite for membership, *he shall thereupon cease to be a member*." (Italics ours.)

It appears that the plaintiff, who had been compelled to retire in November, 1940, was not a member when the 1941 Act took effect, and it therefore was not applicable to him.

In this connection we again make reference to *Schofield* v. *Zion's C. M. I.* case, supra, 85 at page 292, of the Utah report, 39 P. 2d at page 346, it is said:

"Section 15 provides that neither the establishment of the system nor any action of the board of pensions in operating the department 'shall be construed as giving any officer or employee of the Institution a right to be retained in service or any right to claim any pension allowance.' This definitely applies to officers and employees.

*A retired pensioner is not an employee.* He ceased to be an employee when he was pensioned." (Italics added.)

Under the facts in this case, considered in the light of what we regard as the majority and better view of the law and the purpose and wording of our statutes, ▮ we conclude that the petition should be granted. The alternative writ of mandamus heretofore issued is made permanent.

LARSON, McDONOUGH, and WADE, JJ., concur.

WOLFE, Chief Justice (concurring).

I think it sufficient to rest my concurrence on the ground that Driggs, having fulfilled all the conditions required to make the pension payable, had a vested and fixed right thereto. When the employer promises to his employee prospective periodic payments to commence after a certain term of service and upon the fulfillment of other conditions, it constitutes an offer which ripens into a contract upon the fulfillment of those conditions; the fulfillment of the conditions which brings the contract into being at the same time constitutes a performance of said contract on the part of the employee. This is true in principle whether it is the State or a private party which makes the promise or holds out the inducement.

MOFFAT, J., having disqualified himself, did not participate herein.