## GRIFFIN v. SALT LAKE CITY.

No. 6960.   Decided January 6, 1947.   (176 P. 2d 156.)

See 43 C. J., Municipal Corporations, sec. 1925; 30 Am. Jur. 267. Municipal immunity from liability for torts, note, 120 A. L. R. 1376.

*Stewart M. Hanson* and *Willard R. Hanson,* both of Salt Lake City, for appellant.

*A. Pratt Kesler, E. R. Christensen* and *Homer Holmgren,* all of Salt Lake City, for respondent.

McDONOUGH, Justice.

Appellant, defendant below, seeks reversal of judgment against it for alleged negligence on its part whereby the 12 year old daughter of plaintiff was drowned on August 12, 1945, in the main indoor swimming pool of the Wasatch Springs Plunge.

Plaintiff's daughter Carmen with two other children paid the admission price to enter the pool on the day in question. They were admitted to the pool while it was being filled, which was contrary to the regulations. The size of the pool is 120 feet by 50 feet. A rope is always stretched across the pool to indicate the line where the water becomes deeper. Near the rope there is a lifeguard station. The diving board extends about eight feet over the deep end of the pool.

The city ordinances require a guard to be on duty at all times while a swimming pool is in use. On the day in question, these children were all on the shallow water side of the rope. The lifeguard noticed that the temperature was rather high, and stepped outside to get another guard to relieve him. A very brief interval occurred between the time the one guard left and the other one arrived at the inside pool where these children were playing in the water. During that short period when the pool was left unguarded, the tragedy occurred.

During the absence of the guard, Carmen and her two companions, by use of their hands, holding onto the drain trough at the top of the pool, worked their way into deep water. Carmen said to the other two, "Let's see how deep it is." When one of the boys, who was too short to reach the hand rail, had to pull himself up by holding onto the swimming suit of his boy companion, he became frightened and did not venture farther into deep water. Carmen released her hold on the hand rail to test the depth, and when she came up she was close to the diving board. One of the boys saw her gasp and try to call for help. She went under again, and came up closer to the diving board. She then made a gasp but uttered no sound, and then went under the water for the last time. When one of the boys observed

that she did not come up again, the relief guard who had just come into the room was notified. By the time he reached the vicinity where Carmen had gone under the water, the drowning had apparently occurred. The relief guard immediately located the body lying on the bottom of the pool, and he quickly recovered it. All efforts to resuscitate the girl failed.

The public is permitted to use this swimming pool only by paying the required admission price. In 1945 the revenues exceeded the operating costs by a little over $1,200 if depreciation is excluded; but if depreciation is considered an item of cost of operation, there was a deficit. The admission price to the main pool is 41 cents per person for adults and 17 cents for children, which price includes soap, towel, suit, and the state and federal admission taxes.

On this appeal defendant contends: (1) That the operation of the swimming pool is a governmental function, for which it can incur no liability for death due to negligence of any of its employees; (2) that the city ordinances imposing safety and health regulations on operators of swimming pools and bathhouses are therefore inapplicable; and (3) even if such operation of said property was not in a governmental capacity, the decedent was guilty of contributory negligence as a matter of law.

Counsel for appellant concede that *Burton* v. *Salt Lake City,* 69 Utah 186, 253 P. 443, 445, 51 A. L. R. 364, which was decided on demurrer, involved the identical premises. In that case the city also contended that the operation of a swimming pool is conducted in a governmental rather than in a proprietary capacity. In that case Mr. Justice Frick stated:

"* * * Is it not pertinent to ask, What governmental function does Salt Lake City exercise in conducting the bathhouses and swimming pools in question? In what way does it discharge any governmental function? What is it that it governs or regulates or controls of a public or governmental character? * * * We confess our utter inability to perceive any act of a governmental nature which the city exercises in owning, operating, and conducting the bathhouses and swimming pools referred to in the complaint."

This court in that case held that the complaint stated a cause of action for death resulting from negligence of city employees, by showing that the charging of more than a nominal admission price and other incidents of operation indicated that the swimming pool was operated by the municipality in a proprietary capacity rather than as a governmental function. It was pointed out, however, that

"The mere fact that a fee is exacted or a charge is made is not conclusive against the city,"

to determine whether the enterprise is conducted in a proprietary rather than in a governmental capacity.

Counsel for the city in this case contend that the Burton case cannot serve as authority in the instant case because the decision was based upon the language of Sec. 570x14, C. L. U. 1917, which was altered by deletion of the word "bathhouses" by code revision when Revised Statutes of Utah 1933 were adopted. Prior to revision said statute read as follows:

"To construct and maintain waterworks, gas works, electric light works, telephone lines, street railways, or *bathhouses*, or to authorize the construction and maintenance of the same by others, or to purchase or lease any or all of said works from any person or corporation; * * *."

Appellant admits that at the time the Burton case was decided there was another statute which authorized the city to establish and maintain bathhouses and swimming pools, which statute was not referred to in the Burton case. Appellant contends, however, that such statute, Sec. 570x8, C. L. U. 1917, as amended by Laws of Utah 1919, chap. 11, p. 20, authorized bathhouses and swimming pools to be established and maintained only in a governmental capacity, by specifying the grant of authority in connection with functions which could be exercised only as governmental ones. That statute then read as follows:

"To lay out, establish, open, alter, widen, narrow, extend, grade, pave, or otherwise improve streets, alleys, avenues, boulevards, side-

walks, parks and public grounds and to vacate streets, alleys, avenues, parks and boulevards or parts thereof, by ordinance; and *to establish, maintain and provide for the supervision of bath houses,* public playgrounds, recreation places, *and swimming pools.*" (Emphasis added.)

Counsel premise their argument that the authority granted by said section to establish and maintain bathhouses and swimming pools relates to governmental functions on the fact that a number of other activities authorized in the first part of the section are governmental functions. They claim that when enacted, such statute thereby manifested a legislative intent that swimming pools established by municipalities be maintained in their governmental capacity rather than in any proprietary capacity. However, by the 1933 code revision, the portion of the statute following the semicolon was made a separate section, to read as follows (15-8-9, R. S. U. 1933):

"They may establish, maintain and provide for the supervision of bath houses, public playgrounds, recreation places and swimming pools."

It will be noted that municipalities were not only granted the right to establish and maintain bathhouses and swimming pools, but also the power to supervise the same, which contemplated that some of them might well be in private ownership. The statute did not limit the ■ supervision to those recreation places, swimming pools and bathhouses owned by municipalities, but granted general supervision over all swimming pools and bathhouses as well as recreation places, as a matter of police power. We therefore find no merit to the argument that ownership of a swimming pool would necessarily be in a governmental capacity, since private citizens and corporations organized for pecuniary profit could also engage in such enterprises, but still be subject to municipal regulation and supervision. There is nothing in the statute which makes it mandatory for any municipality to own or to maintain swimming pools or bathhouses either in connection with public parks or independent of public parks.

The indicated changes in the statutes made by the 1933 revision do not evidence a legislative intent to change the law as applied in *Burton* v. *Salt Lake City*, supra; and absent legislative action, we are not disposed to overrule that case.

"The modern tendency is to restrict rather than extend the doctrine of municipal immunity. The courts and law writers are coming more and more to feel the injustice of the entire doctrine. And the tendency of the courts, revolted by the hardships resulting from this doctrine in individual cases, is to introduce fictions and artificial distinctions in order to avoid the full rigor of the doctrine. This, although attaining desirable results in the individual cases, has brought about such confusion on the question of what acts are governmental and what are proprietary that it is impossible to reconcile the cases, and perhaps useless to attempt to rationalize departures from the general doctrine." 38 Am. Jur. pp. 266, 267.

See discussion of Mr. Justice Wolfe in his concurring opinion in *Niblock* v. *Salt Lake City*, 100 Utah 573, 111 P. 2d 800.

We see no occasion for extending governmetal immunity from liability for tortious acts of employees, by labeling some activity as a governmental function simply because the enterprise is municipally owned. We are particularly adverse to reading something into the statute which would have the effect of permitting municipalities to engage in various enterprises only in a governmental capacity, when such activities are of the type and character of businesses owned and managed by private citizens for pecuniary profit. We do not say that a municipality might not operate swimming pools in connection with public parks in a governmental capacity, where such pools are open to the public without charge or at a nominal charge. All we are required to do in this case is to decide whether Salt Lake City could continue to operate the Wasatch Springs Plunge in a proprietary capacity, and whether at the time in question in this case the institution was so operated.

As far as the record in this case is concerned, the swimming pool involved has been operated substantially the same at all times since our decision in the Burton case. The institution may be adjacent to a public park, but it is not

operated as a part of such adjacent park. The premises are set off from the public park as distinctly as if located in an entirely different area. It appears that the city has operated the resort by charging an admission price in much the same manner as a corporation engaged in business for profit.

The fact that the city collects the state and federal tax on admissions, appears to us to indicate that the city officials do not regard the enterprise as a governmental function. It is true that if the city were to compute depreciation in figuring operational costs, it would ■ show a deficit instead of a profit. The fact that a municipality may incur a deficit in the operation of some enterprise in competition with private business, does not necessarily change it from a proprietary activity to a governmental function. If it could, a governmental business efficiently managed would be attended with no immunity from suit, whereas the same busines when mismanaged and characterized by acts of negligence resulting in damage to patrons, by merely showing a deficit from such mismanagement could be transformed from a proprietary activity to a governmental function to don the cloak of immunity from suit to prevent redress of wrongs. We need not further illustrate that such would neither be a just rule of law nor one which would encourage efficiency and proper management of municipal enterprises, particularly those in competition with private business.

This is not a case of a swimming pool operated without charge in connection with some park; but an enterprise apparently in competition with private business, and one which could likely be operated as successfully in private ownership as in municipal ownership. The city asked that it shall be treated as a governmental function because it tends to promote health and recreation of those who pay the required admission price and the state and federal admission taxes, when the municipality or the state could exercise proper regulatory supervision to insure compliance with health and safety rules if the institution were in private ownership.

Most of the cases cited where the municipality was held to be immune from suit for negligence in the operation of a swimming pool, are either cases where no admission fee whatsoever is charged or the fees charged are so nominal as to be insignificant. In *Hoggard* v. *City of Richmond*, 172 Va. 145, 200 S. E. 610, 616, 120 A. L. R. 1368, the majority of the Supreme Court of Appeals of Virginia, in a case where no admission fee was charged for a swimming pool, held that the municipality was not immune from liability. The dissenting opinion states that the "Great weight of authority" favors the view

"That the operation of such a facility for the gratuitous use of its citizens is a governmental function, and that therefore the municipality is immune from liability in connection with such operation."

We hold that under the facts of this case, a showing that there was an admission charge, a collection of state and federal taxes on admission to Wasatch Springs, and related factors which indicate that the swimming pool and facilities are operated as a business enterprise, the operation of the institution in question is not a governmental function, and hence Salt Lake City has no immunity from liability for negligent operation.

What we have said hereinabove, disposes of the second contention, that the ordinances of Salt Lake City regulating swimming pools and bathhouses have no application to pools owned and maintained by the municipality. Assuming that the ordinances might be construed to apply only to persons engaged in business, by engaging in business itself the city is bound by the same safety and health rules and regulations which apply to all operators of the same kinds of business enterprises. It would be a travesty on justice for a municipality to go into business in competition with private citizens, and impose certain health and safety regulations upon operators of such types of business, and then to claim exemption from compliance with those very regulations designed to safeguard life and health. If regulations made under a grant of police power are reasonably necessary for the health and safety of per-

sons who patronize a privately owned place of recreation operated for profit, such regulations should also be applicable to the same kind of enterprise operated by a municipality in a proprietary capacity.

The point argued that decedent was guilty of contributory negligence as a matter of law, is not well founded. The fact that a younger child who could not reach the drain trough at the top of the pool became frightened and would not venture farther into deep water, does not show that the decedent could not proceed with less danger than the child who was frightened. The fact that the city ordinances made it the duty of every operator of a swimming pool to have a lifeguard on duty at all times while the pool happened to be open, indicates that the safety of patrons using the pool requires the attendance of a lifeguard. In this case, if the guard had been present as required by the ordinance, he would not have permitted the children to have taken the risks to which their fun-loving adventure led them. Even if some warning had been given by the guard to caution the children, it would likely have served as a restraint. The guard had previously whistled to them, and they had heeded the warning signal to go back. If a guard had been on duty, even disobedience to warnings would not necessarily have been fatal.

Swimming involves certain dangers. Hence the need for the attendance of a lifeguard, particularly in cases where patrons are inexperienced or inefficient swimmers. The operator of a swimming pool who invites patrons to his place of business must, in accordance with the recited ordinances, maintain a guard on duty to protect as far as practicable such patrons from perils of drowning. When children engage in play or in games they do not generally exercise the same cautions which people do at work. It could not be held as a matter of law that a child who resorts to some prank in a swimming pool during the absence of a guard who should be on duty is contributory

negligent; for a child does not necessarily nor consciously expose himself to injury or risk of death.

Judgment affirmed. Costs to respondent.

LARSON, C. J., and PRATT, WADE, and WOLFE, JJ., concur.