Alexander Del Gtorno, J.
This is a claim to recover the fair market value of property appropriated by the State of New York for the New England Section of the New York State Thruway.
The property consists of an unimproved lot approximately 25 feet by 91 feet having an area of 2,277.4± square feet or 0.052± acres, situate on the south side of Crescent Avenue and known as Block 1224, Lot 14 on the official tax assessment map of the City of New Rochelle. The property was zoned for industrial purposes.
The property was purchased by claimant’s predecessor in title, the Village of New Rochelle, in or about the year 1893. In the following year, sewer and drainage facilities were installed and since that time claimant has used the property continuously for sewer and drainage purposes.
*455 Chapter 128 of the Laws of 1899 provided for the incorporation of the City of New Rochelle and provided for the transfer to the city of all property owned by the village.
On or about April 3, 1929, claimant granted to the County of Westchester a perpetual easement over the subject property for the purposes and uses as set forth in chapter 292 of the Laws of 1922. This grant is referred to on the map and description in the following language: “ Subject to the right of the City of New Rochelle, N. Y., its successors or assigns to construct, reconstruct and maintain and operate sewer and drain facilities as such municipality may from time to time deem necessary for the operation of its sewer and drainage system, provided however, that no change in grade be made, or additional facilities constructed which will interfere with the Thruway, structure or other facilities of the State of New York.”
Chapter 292 of the Laws of 1922 created a Board of Commissioners to be known as “ Westchester County Park Commission ” and authorized the acquisition by it of parks, boulevards, streets and highways connecting parks in the County of Westchester. The purposes and uses as set forth in said chapter were limited to the acquisition of property for intracounty highway purposes. The easement in question was granted to the County of Westchester for the construction of the Pelham-Portchester Parkway. The construction of that highway was not consummated by the County of Westchester, but was superseded by the New England Section of the New York State Thruway, which traverses the same route essentially within the County of Westchester as had been contemplated by the Pelham-Portchester Parkway.
No evidence was offered by the State as to the value of the property involved herein. The State contends that claimant’s use of the subsurface of the property for sewerage and drainage facilities was an exercise by it of a governmental function, and that the granting of a perpetual easement over the surface of the property to the County of Westchester for highway purposes was for a public purpose and in the exercise of a governmental function. The State maintains that claimant therefore suffered no damage by reason of the State’s appropriation.
Governmental functions of a municipality generally are those which are essential to its existence as such in the sense of serving the public at large, as distinguished from those which are private, which are not necessary to its existence and which enure to the advantage of its inhabitants. In the former case, municipal property is held by the municipality as an agent of the State for public use, and if the State condemns the property *456 for its own use, it need not pay compensation to the municipality, because the agent municipality holds the property for the principal State. In the latter proprietary function, however, the property is subject to acquisition for public use only by the exercise of eminent domain. (Jahr, Eminent Domain, § 23; 2 Nichols, Eminent Domain [3d ed.], § 5.9 [6].)
Subdivision 2 of section 20 of the G-eneral. City Law provides that every city is empowered: “2. To take, purchase, hold and lease real and personal property within and without the limits of the city; to acquire by condemnation real property within or without the limits of the city for the construction, maintenance and operation of a sewage disposal plant, together with necessary rights of way for extending its sewage system to, and connecting the same with such disposal plant, to acquire by condemnation or purchase real property and/or personal property within or without the limits of the city necessary for the construction, maintenance and operation of a water supply system for such city together with necessary rights of way for extending its water supply system to and connecting the same with a source or sources of water supply; to acquire by purchase, if the city is able to agree with the owners on the terms thereof, and otherwise, by condemnation, in the manner provided by the law under which such city is authorized to acquire real property for public purposes, or if there be no such law, in the manner provided for and subject to the provisions of the condemnation law, real property within or without the limits of the city for the construction, maintenance and operation of drainage channels and structures for the purpose of flood control, when plans for such purpose have been approved by the state department of public works, together with necessary rights of way for extending such channels and structures; and also to acquire by condemnation real and personal property within the limits of the city, for any public or municipal purpose, and to sell and convey the same, but the rights of a city in and to its water front, ferries, bridges, wharf property, land under water, public landings, wharves, docks, streets, avenues, parks, and all other public places, are hereby declared to be inalienable, except in the cases provided for by subdivision seven of this section.”
Subdivision 7 of section 20 of the same law provides that every city is empowered: “ 7. To lay out, establish, construct, maintain, operate, alter and discontinue streets, sewers and drainage systems, water supply systems, and lighting systems, for lighting streets, public buildings and public places, and to lay out, establish, construct, maintain and operate markets, parks, play *457 grounds and public places, and upon the discontinuance thereof to sell and convey the same. ’ ’
Thus it is apparent that the city is empowered to acquire property for its sewage system and to sell the same upon discontinuance thereof. Property acquired for sewer purposes is held by it in a proprietary capacity, not for the benefit of the general public but rather for the advantage of its own inhabitants. Compensation must be made for such taking. (Village of Canajoharie v. State of New York, 13 Misc 2d 293, affd. 8 A D 2d 656, citing Benson v. Mayor of New York, 10 Barb. 223, 244, 245; Knapp v. Fasbender, 1 N Y 2d 212, 226; Proprietors of Mt. Hope Cemetery v. City of Boston, 158 Mass. 509; 1951 Atty. Glen. 129.) Any property held by a city in its proprietary or corporate capacity is not subject to unrestricted legislative authority. (Whitney v. State of New York, 96 N. Y. 240; Eldridge v. City of Binghamton, 120 N. Y. 309; see City of Schenectady v. State of New York, 6 Misc 2d 232.) Such status places the property so held within the designation and requirements of the Constitution pertaining to the taking of private property, which can be done only by the exercise of eminent domain with payment of full compensation. (City of Schenectady v. State of New York, supra, citing County of Herkimer v. Village of Herkimer, 251 App. Div. 126, 128, affd. 279 N. Y 560.)
The court holds that the claimant acted in a proprietary capacity and that if the sewer and drainpipes were discontinued for any reason, or moved to another location, claimant could sell the property without the sanction of the Legislature, since such property is designated specifically by law as not inalienable. Further, claimant at any time could do any and all work it desired without the permission of the County of Westchester.
There remains for consideration the question of the effect of the grant by claimant to the County of Westchester for highway purposes of the perpetual easement over the surface of the property.
The easement was granted to the county ‘ ‘ for the uses and purposes as set forth in chapter 292 of the Laws of 1922, and the acts amendatory thereof and supplemental thereto ’ ’, namely, the construction of the Pelham-Portchester Parkway. The easement granted to the county was an easement in gross (see Weigold v. Bates, 144 Misc. 395), in that it conferred a right or privilege" personal to the county only (Saratoga State Waters Corp. v. Pratt, 227 N. Y. 429; Atlantic Mills of R. I. v. New York Cent. R. R. Co., 221 App. Div. 386, affd. 248 N. Y. 535), for the *458 purposes set forth, therein, subject to reverter to claimant in the event of abandonment thereof.
An easement created by grant or reservation may be extinguished by abandonment. (Holden v. Palitz, 1 A D 2d 685; see Adirondack Power & Light Corp. v. Evans, 226 App. Div. 490.) An easement expressly or impliedly limited to a certain purpose is extinguished by the permanent abandonment of that purpose. (Norris v. Hoffman, 133 App. Div. 596, affd. 197 N. Y. 578.) In the case of Snell v. Levitt (110 N. Y. 595, 602-603) the court held: “ Non-user for a period of twenty years, under such circumstances as show an intention to abandon and give up the easement, is sufficient to extinguish it; and even an abandonment for a shorter period, under such circumstances as show an intention to give up and release an easement, which is acted upon by the owner of the servient tenement so that it would work harm to him if the easement were thereafter asserted, would operate to extinguish the easement.”
Here, the easement was granted to the County of Westchester in 1929 for the express purpose mentioned, which purpose was never served by the county in constructing the Pelham-Portchester Parkway. The instant proceeding was commenced in 1955, twenty-six years thereafter. The court finds that there was an intention on the part of the county to abandon the easement and an overt failure to act which indicated that the county neither claimed or retained any interest in the easement. Although the abandonment of an easement is not established by a mere cesser of use, when accompanied by other circumstances showing an intention to abandon, disuse will establish it. (Welsh v. Taylor, 134 N. Y. 450.) The easement therefore is deemed abandoned and extinguished. (See Matter of City of New York [Realty Associates], 256 N. Y. 217.) Since the fee title to the property is thus in claimant, it is entitled to recover the fair market value of the property acquired by the State free of easement previously granted by claimant to the County of Westchester.
Claimant is entitled to an award in the sum of $3,100, with interest thereon from April 6, 1955 to October 6, 1955, and from August 9,1958 to the date of entry of judgment.