Richard D. MADSEN and Nancy Madsen, his wife, Boyd A. Swensen and Beatrice Swensen, his wife, Hope A. Hilton, Blaine Anderson and Sheree Anderson, his wife, Cynthia Hilton, Ralph M. Hilton, Middle East Foundation and Gene A. Hellend, on behalf of themselves and all others similarly situated, Plaintiffs and Appellants,

v.

Mirvin D. BORTHICK, Commissioner of the Utah Department of Financial Institutions, and the State of Utah, Defendants and Respondents.

No. 17772.

Supreme Court of Utah.

Jan. 28, 1983.

Robert J. DeBry, Salt Lake City, for plaintiffs and appellants.

David L. Wilkinson, Stephen J. Sorenson, Salt Lake City, for defendants and respondents.

Joseph C. Rust, Charles W. Hanna, Salt Lake City, for amicus curiae.

OAKS, Justice:

Plaintiffs deposited money in Grove Finance Co., a corporation plaintiffs claim is a banking business within the meaning of the state law regulating banks. U.C.A., 1953, § 7–3–1, et seq.[1] Plaintiffs allege that these deposits were made in reasonable reliance upon defendants' duty to perform specified statutory functions with respect to that institution.[2] Defendants are the State of Utah and its Commissioner of Financial Institutions, who, plaintiffs allege, "wholly failed to discharge" their statutory functions. As a result, plaintiffs allege, Grove Finance Co. has become insolvent and plaintiffs have lost substantial sums of money. Making class action allegations to represent all depositors, plaintiffs seek "reimbursement" from defendants for all monies each class member has deposited in Grove Finance Co. (plus interest).

Defendants moved to dismiss on the basis that plaintiffs' action was barred by the Utah Governmental Immunity Act, because plaintiffs admittedly had not filed a written notice of claim within the one year required by U.C.A., 1953, § 63–30–11 and § 63–30–12. Before taking any action on whether plaintiffs could proceed as a class action, the district court dismissed the complaint for failure to state a claim upon which relief could be granted. The issues for resolution on plaintiffs' appeal are the applicability of the notice requirement, governmental immunity, and official immunity.

Plaintiffs make four ingenious arguments in an attempt to circumvent the immunity defense and the notice provision: (1) Statutory or common-law sovereign immunity is unconstitutional under Article I, § 11 of the Utah Constitution (courts shall be open for remedies for all injuries). (2) Sovereign immunity does not bar this cause of action because the Governmental Immunity Act confers immunity for acts but not for "omissions" such as challenged here. (3) The notice requirement does not apply because there is no immunity as to this cause of action. (4) There is no official immunity

---

1. Section 7–3–1, et seq., and § 7–1–1, et seq., cited hereafter, were repealed by the Financial Institutions Act of 1981, ch. 16, 1981 Utah Laws 27 (codified at U.C.A., 1953, § 7–1–101 through § 7–15–2 (Supp.1981)).

2. The Commissioner and his department have the duty (under the statutory law pertinent to this controversy) of supervising banks, including examining resources and management annually (§ 7–1–8), notifying boards of directors if a bank officer is dishonest, reckless, or incompetent (§ 7–1–13), requiring boards of directors to make at least annual examinations of the books and affairs of the bank (§ 7–1–14), requiring quarterly reports of financial condition, including newspaper publication (§ 7–1–17), and notifying the county attorney of any misdemeanor or felony committed by any officer, director, or employee of any supervised institution (§ 7–1–23).

for the Commissioner's negligent performance of the functions required by the statutes since they are ministerial rather than discretionary. For the reasons set out hereafter, we have concluded that none of these arguments is well taken.[3]

## I. CONSTITUTIONALITY OF SOVEREIGN IMMUNITY

Sovereign immunity—the principle that the state cannot be sued in its own courts without its consent—was a well-settled principle of American common law at the time Utah became a state. *Wilkinson v. State,* 42 Utah 483, 492–93, 134 P. 626, 630 (1913); *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890); *Memphis and Charleston Railroad v. Tennessee,* 101 U.S. 337, 25 L.Ed. 960 (1880). *See generally,* E.M. Borchard, "Government Liability in Tort," 34 *Yale L.J.* 1, 129 (1924), 229 (1925). Article I, § 11 of the Utah Constitution, which prescribes that all courts shall be open and persons shall not be barred from using them to redress injuries, was not meant to create a new remedy or a new right of action. *Brown v. Wightman,* 47 Utah 31, 34, 151 P. 366, 366–67 (1915). Consequently, Article I, § 11 worked no change in the principle of sovereign immunity, and sovereign immunity is not unconstitutional under that section. It was so held in *Brown v. Wichita State University,* 219 Kan. 2, 8–12, 547 P.2d 1015, 1022–24 (1976), which involved a similar provision of the Kansas Constitution. We concur in the reasoning and result of that decision.

## II. THE SCOPE OF THE UTAH GOVERNMENTAL IMMUNITY ACT

The Utah Governmental Immunity Act, U.C.A., 1953, § 63–30–1, *et seq.,* which be-

came effective in 1966, reaffirmed governmental immunity "for any injury which results from the exercise of a governmental function," § 63–30–3 (subject to various express statutory waivers), but it significantly qualified governmental immunity otherwise. In the leading decision on the meaning of that Act, this Court referred approvingly to the following statement in a scholarly analysis:

[T]he Legislature designed this statutory scheme to allow the courts flexibility and adaptability in fashioning consistent and rational limits to governmental immunity.

*Standiford v. Salt Lake City Corp.,* Utah, 605 P.2d 1230, 1232 (1980). Those limits would be fashioned by the gradual process of interpretive litigation on the meaning of the key statutory term "the exercise of a governmental function." § 63–30–3. Commenting on the effect of the *Standiford* holding in redefining and limiting the extent of governmental immunity, this Court explained in *Johnson v. Salt Lake City Corp.,* Utah, 629 P.2d 432, 433 (1981):

For present purposes, this means that "all government entities are immune from suit for any injury which results from the exercise of a governmental function," U.C.A., 1953, § 63–30–3, but such entities are not immune from suit for an injury which does not result "from the exercise of a governmental function."

It is evident from the text of the Utah Governmental Immunity Act, as interpreted in *Standiford* and *Johnson,* that this legislation significantly altered the common law of sovereign immunity, and substituted a statutory framework to be interpreted by

---

**3.** After this case was argued and submitted in this Court, Matthew Fenn Hilton and a group of other Grove Finance depositors, who have an attempted class action pending against these same defendants in the district court, sought to intervene in this appeal, or, in the alternative, to file an amicus brief. This Court denied intervention, but permitted the filing of an amicus brief. Respondents later moved to strike the amicus brief as an impermissible attempt to introduce new issues beyond those raised by the litigants.

° Consistent with the well-settled rule that an amicus brief cannot extend or enlarge the issues on appeal, *In re Woodward,* 14 Utah 2d 336, 337, 384 P.2d 110, 111 (1963); *Montana Wildlife Fed'n v. Sager,* Mont., 620 P.2d 1189, 1200 (1980); *State ex rel. Baxley v. Johnson,* 293 Ala. 69, 74, 300 So.2d 106, 110–11 (1974); *In re Kootz' Will,* 228 Wis. 306, 313–14, 280 N.W. 672, 675 (1938), we have only considered those portions of the amicus brief that bear on the issues pursued by the parties to this appeal. This makes it unnecessary to rule on respondents' motion to strike.

the courts and reshaped by the Legislature as necessary from time to time.[4] Under that framework, the right to maintain an action against the state or its political subdivisions can result (1) from a finding that the injury did not result from the exercise of a governmental function, or (2) from a finding that even though the injury resulted from the exercise of a governmental function, the government's immunity has been expressly waived in one of the sections of the Act.

■ Essential to the benefits to be derived from the rational development of the law under this new statutory framework was the total abandonment of the old distinction between governmental and proprietary. In *Standiford,* we characterized that distinction and the traditional analysis based on it as "basically unsound," as "artificial," and as "incapable of providing sensible, consistent guidelines with respect to governmental tort liability . . . ." 605 P.2d at 1233–34. In *Johnson,* we recognized that the *Standiford* abandonment of the governmental-proprietary distinction was an attempt "to escape the inevitable chaos that had resulted from trying to apply a rule of law based on a distinction that was inherently unsound and unworkable." 629 P.2d at 433. Having abandoned that distinction in the cases cited above, we decline to give the governmental-proprietary distinction new life in the interpretation of sovereign immunity.

## III. THE NOTICE OF CLAIM REQUIREMENT

As amended in 1978, the Governmental Immunity Act prescribes the notice of claim requirement in the following terms:

63–30–11. Any person having a claim for injury to person or property against a governmental entity or its employee *shall, before maintaining an action under this act, file a written notice of claim* with such entity for appropriate relief including money damages. The notice of claim shall . . . be directed and delivered to the responsible governmental entity within the time prescribed in section 63–30–12 or 63–30–13, as applicable.

\* \* \* \* \* \*

63–30–12. *A claim against the state is barred unless notice of claim is filed* with the attorney general and the agency concerned *within one year* after the cause of action arises. [Emphasis added.]

Under these sections, a plaintiff must give a timely notice of claim "before maintaining an action under this act . . . ." If the injuries resulted from the exercise of a governmental function, the Act declares the state to be immune from suit unless immunity is waived in the Act. § 63–30–3. Consequently, a timely notice of claim must be given in any case where governmental liability is to be predicated on the exercise of a governmental function.[5] (The question of whether a timely notice of claim must be given where governmental liability is based on the fact that the injuries did not result from the exercise of a governmental function, such as in *Standiford* and its progeny, is not before us, and we express no opinion on it.) Here, the correctness of the State's argument that the case should be dismissed for noncompliance with the notice requirement depends on the "governmental function" question treated in the next Part.

## IV. IMMUNITY FOR GOVERNMENTAL FUNCTION

■ Under § 63–30–3 of the Act, "all governmental entities are immune from

---

4. The comprehensive character of our Governmental Immunity Act distinguishes this case from *Muskopf v. Corning Hospital District,* 55 Cal.2d 211, 359 P.2d 457, 11 Cal.Rptr. 89 (1961), relied on by plaintiffs. In that case, Justice Traynor stressed that the California court was faced with "a series of sporadic statutes, each operating on a separate area of governmental immunity," not "a comprehensive legislative enactment designed to cover a field." 359 P.2d at 461, 11 Cal.Rptr. at 93.

5. In view of our decision under Part IV, it is unnecessary for us to decide and we express no opinion on the question of whether a claim against an *employee* of a government entity would be barred if the notice of claim had not been filed but the entity had a statutory duty to indemnify the employee. *See generally* U.C.A., 1953, §§ 63–30–11 and –12. *See also* note 11, *infra.*

suit for any injury which results from the exercise of a governmental function ..." (with exceptions not claimed here). In this Part, we conclude that government supervision of financial institutions is an activity "of such a unique nature that it can only be performed by a governmental agency ...." *Standiford*, 605 P.2d at 1237.

*Standiford's* reference to activities that "can only be performed by a governmental agency" does not preclude governmental immunity for supervisory functions in some respects similar to those that could be performed by a private association authorized by agreement, such as self-regulation by an industry. *Thomas v. Clearfield City*, Utah, 642 P.2d 737 (1982), is not to the contrary. In that case, we held that sovereign immunity did not protect a municipality from liability for the negligent maintenance of its sewer system, noting that the municipality's power to provide sewer service was insufficient to establish sewer service as a "governmental function" where the function could also be performed privately. The difference between *Thomas* and this case is a difference in the nature of the services performed by the governmental unit. Publicly provided sewer services and privately provided sewer services can be essentially the same. But governmental supervision of financial institutions in the public interest, which includes the exercise of discretionary powers delegated by law, and private oversight by a voluntary association of businesses are qualitatively different. The former can be performed only by a government agency. Thus, unlike the provision of sewer services, the governmental activity in this case qualifies as a "governmental function."

Finally, we see no merit in plaintiffs' argument that § 63–30–3's conferral of im-

munity from suit for injuries which result "from the *exercise* of a governmental function" (emphasis added) withholds immunity for injuries resulting from a *failure or omission* to act. Whether an act is deemed to be an act of commission or omission often depends on how the occurrence is described. An important legal consequence should not be at the mercy of semantics. We are unwilling to read this artificial distinction into the Governmental Immunity Act in the absence of a clearly expressed legislative purpose to that effect. We find none. In fact, the use of the words "act or omission" elsewhere in the statute, *e.g.*, § 63–30–4 and § 63–30–10, provides clear indication that no such distinction was intended.[6]

Since the injury allegedly suffered by plaintiffs resulted from "the exercise of a governmental function," the state is immune from suit under § 63–30–3, unless immunity is expressly waived in one of the succeeding sections of the Governmental Immunity Act. Section 63–30–10 waives immunity for injuries caused by the negligent act or omission of a government employee (except those arising out of "a discretionary function"). While plaintiffs' allegation that defendant Borthick had "wholly failed to discharge" his statutory duties and responsibilities might be construed as an allegation of a negligent omission, plaintiffs expressly disavowed that construction by conceding in the district court that their cause of action did not fall under any of the statutory exceptions to immunity. They make no contrary argument in this Court.[7] For this reason, and because their cause of action is barred in any case by the notice of claim provision discussed in Part II, we have no occasion to rule upon whether defendant Borthick's ac-

---

**6.** *Also see* § 63–30–8 and § 63–30–9, waiving immunity for governmental failures to maintain streets and improvements.

**7.** Counsel for plaintiffs advised the Court in his brief and at oral argument that he did not wish to base his cause of action on any exception to the Governmental Immunity Act since this might subject the depositors (1) to a ceiling on the amount of their recovery (§ 63–30–34), (2) to a substantial problem of class certification,

and (3) to a shorter statute of limitations than would apply if their cause of action were rooted in a common-law claim (*e.g., compare* § 78–12–26(4) with § 78–12–25(2)).

The depositors who filed the amicus brief in this Court, *see supra* note 3, argue that the defendants are liable under the exception to governmental immunity in § 63–30–10. That issue is not before us on this appeal.

tion constituted "a negligent act or omission of an employee" or involved a "discretionary function" within the meaning of § 63–30–10. *Cf.* "The Discretionary Function Exception to Governmental Tort Liability," 61 *Marq.L.Rev.* 163 (1977).

The dismissal of plaintiffs' complaint against the State was proper on the basis of governmental immunity and noncompliance with the notice requirement.

## V.  OFFICIAL IMMUNITY

The remaining issue is the liability of Commissioner Borthick. Since it is unclear from the complaint whether he was sued in his personal capacity or in his representative capacity, we will treat both alternatives.

At common law, "a governmental agent performing a *discretionary* function is immune from suit for injury arising therefrom, whereas an employee acting in a *ministerial* capacity, even though his acts may involve some decision making, is not so protected." *Frank v. State,* Utah, 613 P.2d 517, 520 (1980) (emphasis added). We recently applied this distinction in holding that state university officials were not personally liable for damages caused to third parties by the good faith performance of their discretionary duties. *Utah State University v. Sutro & Co.,* Utah, 646 P.2d 715, 721–22 (1982).

Although this distinction between discretionary and ministerial acts by government employees may serve a useful purpose and may be clear at the extremes, the cases show great discrepancies in the application of the distinction in the troubled borderland where the two different types of conduct interface. W. Prosser, *Law of Torts* 988–92

---

8.  *Tcherepnin v. Franz,* 570 F.2d 187 (7th Cir. 1978); *Walker v. Broderick,* 141 Misc. 391, 252 N.Y.S. 559 (Sup.Ct.1931); *State v. Title Guaranty & Surety Co.,* 27 Idaho 752, 152 P. 189 (1915).

9.  *Emch v. United States,* 630 F.2d 523 (7th Cir.1980); *Gormley v. State,* 54 Ga.App. 843, 189 S.E. 288 (1936). *See generally,* "Government Liability for Defective Regulation in Bank Insolvency Cases," 20 Santa Clara L.Rev. 911 (1980) (liability under federal law).

---

(4th ed. 1971). Thus, plaintiffs cite cases for the proposition that a government official's failure to supervise or take corrective action against a financial institution is ministerial and therefore not qualifying for official immunity,[8] and defendants cite other cases holding that a government official is immune in such circumstances because such action is discretionary.[9] We need not resolve this conflict because the common-law immunity of government officials and employees has recently been supplanted in this state by a statutory immunity based on a different standard.

When the Utah Governmental Immunity Act was enacted in 1966, it had no provisions on the immunity of government officials and employees; "its function [was] confined to governmental 'entities.'" *Frank v. State,* 613 P.2d at 520. However, in the Governmental Immunity Act Amendments of 1978, ch. 27, § 3, 1978 Utah Laws 91, 92–93, the Legislature added the following provisions on official immunity in § 63–30–4:

> The remedy against a governmental entity or its employee for an injury caused by an act or omission which occurs during the performance of such employee's duties . . . *is, after the effective date of this act, exclusive of any other civil action or proceeding by reason of the same subject matter against the employee* or the estate of the employee whose act or omission gave rise to the claim, unless the employee acted or failed to act through gross negligence, fraud, or malice.

An employee may be joined in an action against a governmental entity in a representative capacity if the act or omis-

---

The "discretionary function" characterization of employee acts or omissions continues to be important as a source of *governmental* immunity, since § 63–30–10 uses it as an exception to the waiver of governmental immunity for the negligence of government employees. *See* text at note 7, *supra; Bigelow v. Ingersoll,* Utah, 618 P.2d 50 (1980); *Frank v. State,* Utah, 613 P.2d 517 (1980).

sion complained of is one for which the governmental entity may be liable, but *no employee shall be held personally liable for acts or omissions occurring during the performance of the employee's duties . . . unless it is established that the employee acted or failed to act due to gross negligence, fraud or malice.* [Emphasis added.]

The apparent purpose of these two paragraphs is to replace the common law of official immunity and its distinction between discretionary and ministerial acts or omissions with a new standard coordinated with the standard of governmental immunity established in the Governmental Immunity Act.[10]

The 1978 amendment to the Governmental Immunity Act, in § 63–30–4, establishes a new statutory standard for official immunity. Thus, under the first quoted paragraph, the Act's expansion of the right to sue governmental entities and its permission to sue governmental employees for "gross negligence, fraud, or malice" is declared to be "exclusive of any other civil action or proceeding by reason of the same subject matter against the employee or the estate of the employee . . . ." By this provision, § 63–30–4 precludes all statutory or commonlaw causes of action against an employee in his or her personal capacity for acts or omissions which occur during the performance of the employee's duties, except as authorized in the Governmental Immunity Act.

The second quoted paragraph of § 63–30–4 reaffirms that the employee will not be personally liable unless he or she acted or failed to act due to gross negligence, fraud, or malice. The second paragraph also authorizes the employee to be joined in a representative capacity in an action against the governmental entity, but only where the act or omission "is one for which the governmental entity may be liable" under the Governmental Immunity Act. In other words, the governmental official or employee can only be sued in a representative capacity when the governmental entity is liable.[11]

The application of § 63–30–4 of the Governmental Immunity Act, as amended in 1978, to the liability of defendant Borthick is clear. He cannot be sued in his representative capacity because the state is not liable. See Parts I through IV herein. He cannot be sued in his personal capacity because § 63–30–4 precludes personal liability of a government employee for acts or omissions occurring during the performance of his duties, unless the employee "acted or failed to act through gross negligence, fraud or malice." Since plaintiffs' complaint makes no such allegations, its dismissal as to defendant Borthick was proper.

The judgment of the district court is affirmed. Costs to respondents.

HALL, C.J., and STEWART, HOWE and DURHAM, JJ., concur.

---

10. *Frank v. State, supra,* which applies the discretionary-ministerial distinction in an action against a state employee, is not to the contrary. That case sought damages for a death that occurred two years before the effective date of the 1978 amendment.

11. The intent to adopt a new rule for official immunity is further evident in the 1978 amendment to the notice provision, § 63–30–11, which added a provision to the effect that the service of a notice of claim upon an employee of a government entity is not a condition precedent to the commencement of an action against the employee, and a further provision that the entity need not receive a notice of claim where only the employee was sued, unless the entity had a statutory duty to indemnify the employee. Governmental Immunity Act Amendments, ch. 27, § 5, 1978 Utah Laws 91, 93–94.