**Robert J. DeBRY and Joan DeBry,**
**Plaintiffs and Appellants,**

v.

**SALT LAKE COUNTY, et al.,**
**Defendants and Appellees.**

No. 910217–CA.

Court of Appeals of Utah.

June 9, 1992.

**982**

Edward T. Wells, Salt Lake City, for plaintiffs and appellants.

David E. Yocom and Paul G. Maughan, Salt Lake City, for defendants and appellees.

Before GARFF, GREENWOOD and RUSSON, JJ.

## OPINION

RUSSON, Judge:

Robert and Joan DeBry appeal the district court's order granting summary judgment in favor of Salt Lake County and Wallace R. Noble, in his official and individual capacities. We affirm.

### I. FACTS

In December 1985, Robert and Joan DeBry purchased a newly constructed building located in an unincorporated area of Salt Lake County. The DeBrys took possession of the building pursuant to a temporary, thirty-day certificate of occupancy, issued by Salt Lake County. However, due to the failure to remedy persisting defects in the building, upon which a permanent certificate of occupancy was conditioned, Salt Lake County served the DeBrys with a notice and order to vacate the building. Subsequently, the DeBrys initiated an action against Salt Lake County and its chief building official, Wallace Ray Noble.[1]

Approximately one year earlier, on November 16, 1984, upon application of Cascade Construction (Cascade), Salt Lake County issued a "footings and foundation permit" for the construction of a commercial building at 4252 South 700 East in unincorporated Salt Lake County. On May 30, 1985, during the construction of that building, the DeBrys signed an earnest money sales agreement to purchase the building from Cascade. On December 6, 1985, a representative of Cascade petitioned the county for a temporary, thirty-day certificate of occupancy for the building, representing to Mr. Noble, a Salt Lake

---

1. The DeBrys also initiated actions against the sellers, the contractor, numerous subcontractors, suppliers, the architect, the designer, the real estate company, the lenders, the mortgage company, and the title company, none of which are parties to this appeal.

County building official, that all necessary permits for the building had been obtained by Cascade. Relying on that information, as well as a recent inspection by a county inspector, Noble issued the certificate, indicating that there appeared to be no significant hazard that would preclude temporary occupancy while the building was completed and brought into compliance with the building code. The DeBrys closed on the purchase of the building on December 10, 1985.

After issuing the temporary certificate of occupancy, the county discovered that, aside from the "footings and foundation permit," a building permit had never been issued to Cascade; however, the county allowed the temporary certificate of occupancy to stand. On March 17, 1986, long after the running of the thirty days under the temporary certificate, Salt Lake County performed an inspection of the DeBrys' property and determined that a permanent certificate of occupancy could not be issued due to persisting defects in the building. Accordingly, on March 19, 1986, the county advised the DeBrys of the specific defects and instructed them to cure the defects within thirty working days. When the De-Brys failed to make the necessary improvements, the county, on May 15, 1986, again notified them that they were occupying the building without a valid certificate of occupancy and requested that the DeBrys secure a building permit and correct the building's defects. Again, the DeBrys took no action.

On October 20, 1986, the DeBrys served the county with an affidavit wherein Kenneth Karren, Jr., a state licensed civil engineer, stated that his inspection of the building revealed serious violations of the uniform building code. On November 3, 1986, the county served the DeBrys a notice and order to vacate the building on the basis of the following facts: (1) There was no valid certificate of occupancy; (2) the temporary certificate of occupancy issued December 6, 1985, had expired; and (3) the corrections required by Salt Lake County on March 19, 1986, subsequent to a requested inspection performed by it had not been made.

In December 1986, the DeBrys appealed the notice and order to the Salt Lake County Board of Appeals. The Board denied the DeBrys' request for extension of time to vacate the building, and refused to order additional inspections until the DeBrys had complied with the terms of the notice and order. The DeBrys petitioned this court for review of the Board's decision, but we dismissed the case for lack of jurisdiction. *See Debry v. Salt Lake County*, 764 P.2d 627 (Utah App.1988).

The DeBrys subsequently brought this action in the district court. In their complaint, the DeBrys alleged misrepresentation, fraud, negligence, gross negligence, and violations of their constitutional rights by Salt Lake County and Mr. Noble. After answering the complaint, Salt Lake County and Mr. Noble, as well as the DeBrys, moved for summary judgment. The court granted defendants' motion, ruling that the Governmental Immunity Act, as applied to this action, does not violate article I, section 11 of the Utah Constitution, that Salt Lake County was protected under Utah's Governmental Immunity Act, that Salt Lake County and Mr. Noble did not deprive the DeBrys of their rights under the United States Constitution, and that the De-Brys had failed to adequately state a cause of action in fraud for which relief could be granted against the county or Mr. Noble. The court denied the DeBrys' motion.

The DeBrys appeal the trial court's ruling, raising the following issues: (1) Did the trial court err in ruling that the Utah Governmental Immunity Act, as applied in this case, does not violate article I, section 11 of the Utah Constitution?; (2) Did the trial court err in ruling that the county's actions were governmental functions for which immunity had not been waived under Utah Code Ann. § 63–30–10(1)(c) and (d) (1989)?; (3) Did the trial court err in ruling that the county and/or Mr. Noble did not violate the DeBrys' rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution?; and (4) Did the trial court err in ruling that the De-Brys' complaint failed to establish a cause of action for fraud for which relief could be

granted against Salt Lake County and Mr. Noble in his representative capacity?

## II. STANDARD OF REVIEW

■ On review of a grant of summary judgment, our inquiry is "whether there is any genuine issue as to any material fact, and if there is not, whether the [defendants] are entitled to judgment as a matter of law." *Thornock v. Cook*, 604 P.2d 934, 936 (Utah 1979) (citations omitted). Since summary judgment presents for review conclusions of law only, because, by definition, summary judgments do not resolve factual issues, we review those conclusions for correctness, according no deference to the trial court. *Bonham v. Morgan*, 788 P.2d 497, 499 (Utah 1989).

## III. ARTICLE I, SECTION 11 CLAIM

■ The DeBrys' first claim alleges that the trial court erred in ruling that the Governmental Immunity Act, as applied in the present case, is not violative of article I, section 11 of the Utah Constitution. Article I, section 11 states:

All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, which shall be administered without denial or unnecessary delay; and no person shall be barred from prosecuting or defending before any tribunal in this State, by himself or counsel, any civil cause to which he is a party.

Specifically, the DeBrys argue that Utah Code Ann. § 63–30–4(3) and (4) (1989) [2] violates article I, section 11 to the extent that the legislature's enactment of those subsec-

tions repealed common law principles which, according to the DeBrys, did not grant broad immunity to counties and its employees, and thus would not bar the present action.

However, the DeBrys do not cite, and we have not found, any persuasive authority for their proposition that counties and county employees were not afforded broad immunity at common law. Further, even if that were the case, they fail to establish any vested cause of action resulting from their alleged injury prior to the legislature's supposed repeal of common law and enactment of section 63–30–4 so as to mount a successful constitutional challenge to that statute under article I, section 11, as required by the Utah Supreme Court in *Berry v. Beech Aircraft Corp.*, 717 P.2d 670 (Utah 1985), which stated:

[N]either the due process nor the open courts provision [of article I, section 11] constitutionalizes the common law or otherwise freezes the law governing private rights and remedies as of the time of statehood. It is, in fact, one of the important functions of the Legislature to change and modify the law that governs relations between individuals as society evolves and conditions require. However, *once a cause of action under a particular rule of law accrues to a person by virtue of an injury to his rights, that person's interest in the cause of action and the law which is the basis for a legal action becomes vested, and a legislative repeal of the law cannot constitutionally divest the injured person of the right to litigate the cause of action to a judgment.*

**2.** Utah Code Ann. § 63–30–4(3) and (4) (1989) provides:

(3) The remedy against a governmental entity or its employee for an injury caused by an act or omission which occurs during the performance of such employee's duties, within the scope of employment, or under color of authority is, after the effective date of this act, exclusive of any other civil action or proceeding by reason of the same subject matter against the employee or the estate of the employee whose act or omission gave rise to the claim, unless the employee acted or failed to act through fraud or malice.

(4) An employee may be joined in an action against a governmental entity in a representative capacity if the act or omission complained of is one for which the governmental entity may be liable, but no employee may be held personally liable for acts or omissions occurring during the performance of the employee's duties, within the scope of employment or under color of authority, unless it is established that the employee acted or failed to act due to fraud or malice.

*Id.* at 676 (citations and footnote omitted) (emphasis added).

Section 63–30–4(3) and (4) was enacted by the legislature in 1978, however, the De-Brys' alleged injury and resulting cause of action did not vest until 1986. Because the DeBrys did not have a vested cause of action under what they contend to be the common law rule, the legislature's enactment of section 63–30–4(3) and (4) did not amount to an unconstitutional divestiture of the DeBrys' right to litigate their claim. Therefore, the DeBrys' challenge to the constitutionality of section 63–30–4 under article I, section 11 fails.

■ Moreover, even if the DeBrys could maintain a challenge to section 63–30–4, the Utah Supreme Court, in a case similar to the one before us, expressly held that the Governmental Immunity Act's grant of sovereign immunity to state entities does not violate article I, section 11. The court stated:

> Sovereign immunity—the principle that the state cannot be sued in its own courts without its consent—was a well-settled principle of American commonlaw at the time Utah became a state. Article I, § 11 of the Utah Constitution, which prescribes that all courts shall be open and persons shall not be barred from using them to redress injuries, was not meant to create a new remedy or a new right of action. Consequently, Article I, § 11 worked no change in the principle of sovereign immunity, and sovereign immunity is not unconstitutional under that section.

*Madsen v. Borthick,* 658 P.2d 627, 629 (Utah 1983) (citations omitted).

Because section 63–30–4 grants sovereign immunity to state entities for all causes of action except fraud and malice, we hold that section 63–30–4 does not violate article I, section 11 of the Utah Constitution.

Further, as to the DeBrys' arguments with respect to Mr. Noble, the supreme court in *Madsen* also upheld section 63–30–4 in suits against government officials in their personal or representative capacities. The court stated:

> [Section 63–30–4] establishes a new statutory standard for official immunity. Thus, under [subsection 3], the Act's expansion of the right to sue governmental entities and its permission to sue governmental employees for "gross negligence, fraud or malice" is declared to be "exclusive of any other civil action or proceeding by reason of the same subject matter against the employee or the estate of the employee...." By this provision, § 63–30–4 precludes all statutory or common law causes of action against an employee in his or her personal capacity for acts or omissions which occur during the performance of the employee's duties except as authorized in the Governmental Immunity Act.
>
> [Subsection four] of § 63–30–4 reaffirms that the employee will not be personally liable unless he or she acted or failed to act due to gross negligence, fraud, or malice. [That section] also authorizes the employee to be joined in a representative capacity in an action against the governmental entity, but only where the act or omission "is one for which the governmental entity may be liable" under the Governmental Immunity Act. In other words, the governmental official or employee can only be sued in a representative capacity when the governmental entity is liable.

*Id.* at 633 (footnote omitted).

Accordingly, because the Utah Supreme Court has expressly held that the Governmental Immunity Act's grant of sovereign immunity is not violative of article I, section 11, and has upheld section 63–30–4 to the extent that it grants immunity to government employees in their personal and official capacities, the trial court did not err in granting summary judgment in favor of Salt Lake County and Mr. Noble and ruling that the Governmental Immunity Act, as applied in the case at bar, does not violate article I, section 11 of the Utah Constitution.

## IV. GOVERNMENTAL IMMUNITY CLAIM

■ The DeBrys next argue that the trial court erred in holding that the county's

and Mr. Noble's acts, on behalf of the county, were governmental functions under Utah Code Ann. § 63–30–3 (1989), for which immunity has not been waived under Utah Code Ann. § 63–30–10(1)(c) and (d) (1989).

The relevant portion of section 63–30–3 provides: "Except as may be otherwise provided in this chapter, all governmental entities are immune from suit for any injury which results from the exercise of a governmental function...." Section 63–30–10(1)(c) and (d) states:

(1) Immunity from suit of all governmental entities is waived for injury proximately caused by a negligent act or omission of an employee committed within the scope of employment except if the injury:

.  .  .  .  .

(c) *arises out of the issuance, denial, suspension, or revocation of, or by the failure or refusal to issue, deny, suspend, or revoke, any permit, license, certificate, approval, order, or similar authorization; or*

(d) *arises out of a failure to make an inspection, or by reason of making an inadequate or negligent inspection of any property[.]*

(Emphasis added.)

The DeBrys cite *Madsen* in support of their argument. In that case, the Utah Supreme Court outlined the framework for maintaining an action against the state or its political subdivisions, holding that:

[T]he right to maintain an action against the state or its political subdivisions can result (1) from a finding that the injury did not result from the exercise of a governmental function, or (2) from a finding that even though the injury resulted from the exercise of a governmental function, the government's immunity has been expressly waived in one of the sections of the Act.

*Madsen v. Borthick*, 658 P.2d 627, 630 (Utah 1983).

Pursuant to the framework set out in *Madsen*, the DeBrys argue that issues of fact exist as to whether the county's and Mr. Noble's failure to conduct inspections, failure to issue permits, and issuance of a temporary certificate of occupancy are governmental functions. We disagree. The Supreme Court of Utah has held, as a matter of law, that those functions expressly enumerated in section 63–30–10 are "core governmental functions." The court stated:

[I]mmunity of government entities is waived for injuries caused by employee negligence committed within the scope of employment except where the injuries arise out of certain specific activities listed in section 63–30–10(1)(a) to (1). *Each of the excepted activities listed in section –10 is, interestingly, within the "core" of governmental functions.... Each is of "such a unique nature that it can only be performed by a governmental agency or that is essential to the core of governmental activity."*

*Condemarin v. University Hosp.*, 775 P.2d 348, 350 (Utah 1989) (emphasis added) (quoting *Standiford v. Salt Lake City Corp.*, 605 P.2d 1230, 1237 (Utah 1980)).

■ The DeBrys next claim that even if their injury resulted from a governmental function, some of their claims fall outside the waiver exceptions of section 63–30–10. Specifically, the DeBrys argue that the county has waived immunity for: (1) allowing construction in violation of a stop work order; and (2) failing to follow and enforce its own regulations by permitting the contractor to construct the building and obtain a temporary certificate of occupancy when there was no valid building permit. However, this is nothing more than an attempt by the DeBrys to create claims against the county that fall outside the purview of section 63–30–10. *See, e.g., Gillman v. Department of Fin. Insts.*, 782 P.2d 506, 509 (Utah 1989). Additionally, even as framed by the DeBrys, those claims fit within the exceptions to waiver under section 63–30–10(1)(c). That section provides immunity for governmental entities for negligent acts or omissions of an employee if the injury arises out of the "issuance, denial, suspension, or revocation of, or by the failure or refusal to issue, deny, suspend, or revoke, any permit, license, certificate, approval, order, or similar authoriza-

tion[.]" Utah Code Ann. § 63–30–10(1)(c) (1989) (emphasis added).

The Debrys' first claim, that the county allowed construction in violation of a stop work order, is barred under section 63–30–10(1)(c) since that claim alleges that the county negligently failed to suspend or revoke its approval or authorization. The DeBrys' second claim, that the county permitted the contractor to construct the building and obtain a temporary certificate of occupancy when there was no valid building permit, is likewise barred under that section because that claim alleges that the county negligently omitted to issue a building permit, but nevertheless issued a temporary occupancy certificate. Accordingly, the DeBrys' claims do not fall outside the purview of section 63–30–10, but are squarely covered as exceptions to waiver of immunity under that section.

In sum, we reaffirm that the issuance of permits and certificates of occupancy, and the administering of building inspections as identified by the legislature in section 63–30–10 are "core" governmental functions. Moreover, the county's negligent acts or omissions relating to those functions are expressly excepted from waiver of immunity under the governmental immunity statute, section 63–30–10. Therefore, the trial court did not err in granting summary judgment and ruling that Salt Lake County was immune from suit for its performance of those "core" functions.

## V. CONSTITUTIONAL RIGHTS CLAIM

The DeBrys also argue that the trial court erred in holding that the county and Mr. Noble were immune from suit for deprivation of their constitutional rights. However, in so arguing, the DeBrys misconstrue the district court's ruling. The district court did not rule that the DeBrys' constitutional claims were barred by governmental immunity; rather, the court instead ruled that:

> [T]he plaintiffs have not been deprived of their First, Fifth, or Fourteenth Amendment rights under the United States Constitution by virtue of Salt Lake County's

having issued a Notice and Order to Vacate the plaintiff's premises.

In their complaint, the DeBrys contend that the county and Mr. Noble deprived them of their due process rights. They allege that "as a direct result of the notice to vacate, [the county] wrongfully deprived [them] of the use of their building [and] that their freedom of enterprise and occupation had been taken away." However, the notice and order to vacate was served only after the DeBrys ignored the county's repeated notice and requests to bring the building into compliance with the code. Specifically, the DeBrys disregarded the county's March 19, 1986 notice, which apprised the DeBrys of specific defects that required correction within thirty days in order to procure a permanent certificate of occupancy. Further, the DeBrys ignored a subsequent notice dated May 15, 1986, which again advised the DeBrys that they were occupying the building without a valid certificate of occupancy and demanded that the DeBrys secure a building permit and bring the building into compliance with the code. In fact, it was not until November 3, 1986, nearly six months after the county's last request that the DeBrys comply with the building code, and the Debrys' failure to heed that request, that the county served the notice and order to vacate the building.

Moreover, the DeBrys were afforded a hearing to appeal the notice and order to vacate before the Salt Lake County Board of Appeals. However, because the DeBrys had failed to comply with past orders of the county requiring the DeBrys to cure defects in the building, secure a building permit and certificate of occupancy, and pay required fees, the board determined that the Debrys were occupying the building in violation of the law and denied the Debrys' request for an extension of time beyond the ten days set forth in the notice and order.

The DeBrys argue that notice and hearing are not the only due process issues involved in this case. Specifically, the DeBrys argue that the county denied their due process rights by evicting them as a

retaliatory measure in response to the De-Brys' exercising their first amendment rights by filing a complaint against the county. However, the DeBrys fail to establish, nor does the record indicate, that the county engaged in any retaliatory actions against the DeBrys following the filing of their complaint. Rather, the county, in response to the DeBrys' failure to respond to repeated demands to comply with the county building code, lawfully issued the notice and order to vacate the premises.

Therefore, because the DeBrys were provided sufficient notice to obtain a building permit, cure the building's defects, and secure a certificate of occupancy to avoid the order to vacate the building, as well as being afforded a hearing to appeal the county's order to vacate the premises, the trial court did not err in ruling that the DeBrys were not deprived of their rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution.

## VI. FRAUD CLAIM

■ The DeBrys next claim that the trial court erred in granting summary judgment and ruling that the DeBrys' complaint failed to state a cause of action in fraud for which relief could be granted against the county and Mr. Noble in his representative capacity. The Utah Supreme Court, in *Pace v. Parrish*, 122 Utah 141, 247 P.2d 273 (1952), set out the strict requirements necessary to establish fraud. The elements are:

(1) That a representation was made; (2) concerning a presently existing material fact; (3) which was false; (4) which the representor either (a) knew to be false, or (b) made recklessly, knowing that he had insufficient knowledge upon which to base such representation; (5) for the purpose of inducing the other party to act upon it; (6) that the other party, acting reasonably and in ignorance of its falsity; (7) did in fact rely upon it; (8)

and was thereby induced to act; (9) to his injury and damage.

*Id.* at 274–75 (citations omitted).

In their complaint, the DeBrys allege that Mr. Noble, acting as agent for Salt Lake County, issued a temporary certificate of occupancy for the building, that the certificate of occupancy made certain representations to the citizens of Salt Lake County, that Mr. Noble's representations were false, that Mr. Noble and Salt Lake County had actual knowledge that the representations were false, and that the DeBrys relied on those representations and were damaged by the representations.

Even assuming that the allegations in the Debrys' complaint are true, relief could not be granted as a matter of law. Utah Code Ann. § 63–30–10(f) (1989) provides immunity to the county for injuries arising "out of a misrepresentation by the employee whether or not it is negligent or intentional[.]" *Id.*

Further, since the DeBrys allege fraud against Mr. Noble only in his representative capacity,[3] he is likewise immune under Utah Code Ann. § 63–30–4 (1989). The pertinent portion of that section states "[a]n employee may be joined in an action against a governmental entity in a representative capacity *if the act or omission complained of is one for which the governmental entity may be liable.*" *Id.* (emphasis added). Because Salt Lake County cannot be liable for injuries arising out of misrepresentation under section 63–30–10(f), Mr. Noble is likewise protected from liability under section 63–30–4. Therefore, the trial court did not err in ruling that the DeBrys' complaint failed to state a claim in fraud for which relief could be granted.

We have considered the DeBrys' remaining arguments and find them to be without merit. *See, e.g., Gottfredson v. Utah State Retirement Bd.*, 808 P.2d 153, 154 n. 1 (Utah App.1991).

## VII. CONCLUSION

The trial court did not err in granting summary judgment in favor of Salt Lake

---

**3.** The Debrys allege fraud against "Defendant Noble, acting as agent for Salt Lake County."

County and Mr. Noble, ruling that: (1) The Governmental Immunity Act, as applied in this case, does not violate article 1, section 11 of the Utah Constitution; (2) Salt Lake County and Mr. Noble in his official capacity are immune from suit pursuant to Utah Code Ann. § 63–30–10(1)(c) and (d) (1989); (3) Salt Lake County did not violate the DeBrys' rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution; and (4) the DeBrys failed to state a cause of action in fraud for which relief can be granted against the county and Mr. Noble. Accordingly, we affirm.

GARFF and GREENWOOD, JJ., concur.